[1] This is an appeal from an order granting a nonsuit, duly entered in the minutes of the court. Such *Page 880 
an appeal may properly be taken because the order granting the nonsuit amounted in legal effect to a judgment of nonsuit. (Code Civ. Proc., § 581; Brown v. Sterling Furniture Co., 175 Cal. 563
[166 P. 322]; McColgan v. Jones, Hubbard Donnel Inc.,11 Cal.2d 243 [78 P.2d 1010]; Lewis v. Hammond Lumber Co.,114 Cal.App. 390 [300 P. 49]; Spinner v. Los Angeles Ry.Corp., 52 Cal.App.2d 679 [126 P.2d 940].)
In reviewing the record herein, regard must be had for the rules of law which apply to cases of nonsuit and which are clearly stated in Berger v. Lane, 190 Cal. 443, 452-453 [213 P. 45] as follows: "Every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence adduced must be considered as facts proved in favor of the plaintiffs. Where evidence is fairly susceptible of two constructions, or if one of several inferences may reasonably be made, the court must take the view most favorable to the plaintiffs. If contradictory evidence has been given it must be disregarded. (Estate of Arnold, 147 Cal. 583 [82 P. 252].) The plaintiff must also be given the benefit of every piece of evidence which tends to sustain his averments, and such evidence must be weighed in the light most favorable to plaintiffs' claim. (Anderson v. Wickliffe, 178 Cal. 120 [172 P. 381].) Evidence, whether erroneously admitted or not, if relevant to the issues joined, must be given the credit and benefit of its full probative strength, and any question arising from the fact of variation between the evidence of the witnesses cannot be raised or considered. The evidence must be taken most strongly against the defendant, and if the plaintiff has introduced proof sufficient to make out a prima facie case under the allegations of his complaint the motion, if made upon the close of the case, should be denied. (Bush v. Wood, 8 Cal.App. 647 [97 P. 709];Estate of Daly, 15 Cal.App. 329 [114 P. 787]; Wassermann v.Sloss, 117 Cal. 425 [59 Am.St.Rep. 209, 38 L.R.A. 176, 49 P. 566]; Lassen v. Southern Pac. Co., 173 Cal. 71 [159 P. 143];Kleist v. Priem, 51 Cal.App. 32 [196 P. 72].)" See, also,Bosqui v. City of San Bornardino, 2 Cal.2d 747, 760 [43 P.2d 547]; Angelus Securities Corp. v. Ball, 20 Cal.App.2d 423, 434-435 [67 P.2d 152].
This action presents questions concerning the liability of directors of a corporation by reason of their conduct of certain *Page 881 
loan negotiations. For the complete understanding of the controversial issues involved, it is necessary to recite in some detail the factual background underlying the litigants' respective positions.
On January 21, 1938, the defendants Dolton, Potts and King executed and delivered to the American National Bank of Santa Monica their promissory note in the sum of $5,000. With the money so borrowed and other funds they on January 27, 1938, organized the Concrete Homes Corporation and became the officers and directors thereof. On March 1, 1938, they addressed to the corporation a letter offering to exchange, for a stated amount of its capital stock, certain assets and rights owned by them under licenses or patents covering processes for the construction of concrete buildings. The portion of the letter herein pertinent read as follows: "The undersigned, Lindley W. Potts and Oliver L. Dolton, Jr., have advanced, and may hereafter advance, for working capital and the general purposes of the business, such sum of money as may be necessary for such purposes, not in excess of Fifteen Thousand Dollars ($15,000), including advances made after December 31, 1937, and before acquisition of the business by you, and it is understood that such advances will be repaid by you to the undersigned out of your first net earnings. You will, as such advances are made, evidence the obligation to repay them to said undersigned persons by your promissory note or notes bearing interest at six per cent (6%) per annum, payable out ofnet earnings. It is understood that you will not assume any advances made by any of the undersigned for the benefit of the business, prior to December 31, 1937, . . . Signed: O.L. Dolton, Jr., Helen King, Lindley W. Potts." (Italics added.)
The corporation accepted the offer contained in said letter, and thereupon application was made to the Commissioner of Corporations of the State of California for permission to issue stock in accordance with the agreed terms. The permit was granted and the stock issued in escrow.
On June 20, 1938, the defendants Dolton, Potts and King constituted the entire board of directors of the corporation. On that date they executed a consent to hold and waiver of notice of a special meeting of the board of directors, and such meeting was convened. There were then other stockholders, *Page 882 
but neither the vote nor written consent of any stockholder other than the three mentioned defendants was ever obtained to the holding of such meeting or to any of the actions there taken.
Pursuant to a resolution adopted by the board of directors at said special meeting, the corporation borrowed from the bank the sum of $8,500, to be used in the following manner: $5,025 in satisfaction of the aforesaid promissory note — $5,000 principal and $25 accrued interest — which the three mentioned defendants had executed prior to the organization of Concrete Homes Corporation; $1,275 for repayment of an advance made to the corporation by the defendant Dolton; and the balance, $2,200, for purchase of equipment for the business and operating expense. The $8,500 note was cosigned by the defendant directors. At the time this resolution was passed at the directors' meeting and the consequent payments of $5,025 and $1,275 were made as scheduled from the $8,500 loan, the corporation had not earned any income, either net or gross. In fact, it may be fairly stated that at no time here material did the corporation have any net income.
The plaintiff herein is a judgment creditor of the defendant Concrete Homes Corporation, having recovered a judgment against it on November 14, 1940, in the principal sum of $6,950, with costs in the additional amount of $515.10. At the time of the commencement of this action the judgment had become final. Pursuant to said judgment, a writ of execution was issued out of the superior court on January 16, 1941; and it is conceded that the same was served upon the defendants Dolton and King on the dates alleged in the complaint, and that no service thereof was made upon the defendant Potts. The complaint discloses that the writ was served on the defendant King on January 18, 1941, and on the defendant Dolton on January 20, 1941. The writ of execution was returned by the sheriff wholly unsatisfied. On February 7, 1941, the defendants Dolton and King were examined in supplementary proceedings, at which time each denied any debt or obligation to the Concrete Homes Corporation and each claimed an interest in the property of the corporate judgment debtor adverse to it. Following the refusal of the defendants Dolton and King as officers of the corporation to commence an action on behalf of the corporation against themselves, as individual debtors of said corporate *Page 883 
judgment debtor, to collect moneys claimed by the plaintiff herein as judgment creditor to be due from the defendants Dolton, Potts and King, the plaintiff on June 30, 1941, instituted this action, wherein she seeks a judicial decree that said individual defendants are holding the sum of $6,300 for the use and benefit of the defendant corporation as well as for the plaintiff and other creditors of the corporation; and that a receiver be appointed for the purpose of collecting and receiving said sum from the defendants Dolton, Potts and King. In general the plaintiff's complaint may be said to be based upon the hereinabove quoted letter written by the defendants Dolton, Potts and King under date of March 1, 1938, it being the plaintiff's position that because of the provisions of that letter the propriety of the mentioned defendants' receipt of proceeds from the aforesaid $8,500 loan made by the bank is open to challenge.
The defendants Potts and King answered with a general denial and urged as a separate and affirmative defense that the plaintiff's complaint failed to state a cause of action against them. The defendant Dolton pleaded likewise, but also as a further affirmative defense set up a cross-demand against the defendant corporation in the sum of $18,990.
After having been duly served with summons and complaint, the defendant corporation failed to answer, and at the trial its default was entered and judgment as prayed was ordered against it. The cause then proceeded to trial as against the individual defendants. After the plaintiff had presented her evidence and rested her case, the trial court granted the motion for an order of nonsuit in favor of all three individual defendants. The propriety of this ruling is now here for review.
[2] The purport of the letter of March 1, 1938, written by the respondents Dolton, King and Potts to the corporation, is of primary importance in determining the rights of the parties litigant herein. The minutes of the first meeting of the board of directors of the corporation on March 2, 1938, which were introduced into evidence, set forth the terms of said letter and show that the respondents thereby agreed to transfer to the corporation all of their rights under certain licenses relating to the construction of concrete or part-concrete buildings, in consideration of the corporation delivering *Page 884 
to the respondents a stated amount of its capital stock, consisting of 2,500 shares. As pertinent to the negotiated exchange, the appellant stresses the following language of the respondents' offer as accepted by the corporation: "The undersigned . . . have advanced, and may hereafter advance, for working capital and the general purposes of the business, such sum of money, as may be necessary for such purposes, not in excess of Fifteen Thousand Dollars ($15,000), including advances made after December 31, 1937, and before acquisition of the business by you, and it is understood that such advances will be repaid by you to the undersigned out of your first netearnings." In said letter there also appears this stipulation: "By your acceptance of this offer you will undertake to assume all of the liabilities and obligations of the business incurred after December 31, 1937 (provided that the liability for advances shall be payable only out of net earnings as above scheduled)."
These references to the context of the letter of March 1, 1938, sustain the appellant's position that it constituted a valid and binding contract between the respondents and the corporation, under the terms of which any moneys advanced by the former to the latter after December 31, 1937, "not in excess of Fifteen Thousand Dollars ($15,000)" could only be repaid "out of . . . net earnings"; that, therefore, until the happening of the prerequisite contingency — net earnings by the corporation — the respondents, to the extent of the express limitation, were not entitled to reimbursement. The record conclusively establishes that the $5,000 procured by the respondents on their note and used in furtherance of the business was a transaction under date of January 21, 1938, at which time the corporation was not yet in existence. Manifestly, such advancement was one contemplated by the respondents' letter of March 1, 1938, and was to be repaid only out of the source specified. Nor were subsequent advancements under the terms of the agreement placed on any different basis. The respondents contend that the words in the letter "before acquisition of the business by you" authorize them to be repaid by the corporation, independent of the contingency of net earnings, for any moneys advanced after the corporation's acquisition of the concrete construction business from the respondents pursuant to the resolution adopted at the aforesaid directors' meeting on March 2, 1938. But this *Page 885 
just-quoted phrase must be reconciled with the respondents' definite statement in their letter of March 1, 1938, that they not only advanced but "may hereafter advance, for working capital and the general purposes of the business, . . . not in excess of Fifteen Thousand Dollars ($15,000) . . ." — language clearly indicating their intent to leave advancements to that extent in the hands of the corporation until "net earnings" were made. Such plain commitment must be given its proportionate effect in reviewing the financial dealings here involved.
[3a] Upon the basis of the agreement so concluded between the respondents and the corporation, the appellant cites section 366 of the Civil Code as demonstrating the impropriety of the respondents' action in causing the corporation to execute the $8,500 note to the bank, so as to pay from such sum $6,300 for their individual benefit as above mentioned. Section 366 provides in part as follows: "No corporation . . shall make any loan of money or property to or guarantee the obligation of" a director, officer or shareholder save and except when "such loan or guaranty [is] . . . made by the vote or written consent of the holders of two-thirds of the shares of all classes . . . other than the shares held by the benefited director, officer or shareholder.
"If any such loan or guaranty be made without such vote or written consent of the shareholders, the directors, officer or officers of any such corporation who authorize it or assent thereto shall be jointly and severally liable to the corporation as guarantors for the repayment or return of the sum or value so loaned with interest thereon at the rate of six per cent per annum until paid, or for any liability upon such guaranty."
In support of her position that this section fixes the liability of the respondents, the appellant presents the following argument: That by the aforementioned agreement of March 1, 1938, only "net earnings" were to constitute the corporate funds for the respondents' reimbursement for the amount of their advances made after December 1, 1937, to the extent of $15,000; that inasmuch as the corporation had at no time here material any net income, the exclusive source of recompense never materialized and so their right to repayment, or offset, never accrued; that when under such conditions, *Page 886 
the respondents caused the corporation to execute the note of $8,500 to the bank, in pursuance of their plan of personal benefit therefrom in the respective sums of $5,025 and $1,275 as above described, and such sums were in fact so used, there came into existence, in favor of the corporation, a cause of action for the recovery of the misappropriated funds — $6,300 — plus interest at the statutory rate. (Civ. Code, § 366) Thus, she relies on the general rule stated in 3 Fletcher, Cyc. Corporations, perm. ed., p. 335, § 955: "A statute prohibiting a director of a corporation from borrowing any of its deposits or funds is intended for the protection of the stockholders and depositors or creditors, and does not preclude the corporation from suing a director to recover money loaned to him in violation of the statute, or from enforcing securities taken by it in the transaction." (See, also, 13 Am.Jur.Supp. § 1065.)
While prior to this time this court has not had occasion to construe section 366, supra, its language was a determinative factor in establishing statutory liability in the case of In reGlobe Drug Co. Inc. (1939), 104 F.2d 114. There a trustee in bankruptcy in an action brought against an officer and director of a bankrupt corporation for the alleged wrongful withdrawal of corporate funds recovered judgment on the following factual basis: Pursuant to a resolution adopted at a meeting of the directors of the company, a California corporation, the latter executed a note to the bank and the appellant director cosigned it; said note was delivered to the bank in payment of a personal note it then held against another director, one Stelzner; thereupon the appellant director purchased the company's note with one made by him personally, and thereafter paid the latter; the appellant director then recovered judgment on the note he held against the company. After commenting in its summary of the facts that "the bankrupt [corporation] received nothing for the payments made by it on the Stelzner note, or for its note to the bank" (104 F.2d 116), the court referred to section 366, supra,
as applicable in establishing the appellant's liability and stated at page 118: "We think it is clear here that by execution of its note to the bank, the bankrupt [corporation] made a loan to appellant and Stelzner, or guaranteed their obligation `directly or indirectly.' Appellant and Stelzner both authorized the transaction. Bankrupt incurred liability, *Page 887 
as shown by the judgment against it in appellant's favor, and therefore he was liable jointly and severally under the statute."
Ostensibly there is a factual distinction between the Globe case and the present one. There the cosigned note was used directly in payment of the personal obligation of one of the directors; none of the proceeds passed through the hands of the corporation, so to speak; and the transaction on its face showed the corporation to be the guarantor of the obligation of the individual directors. Here the situation is reversed in that the corporation received the full amount of the $8,500 note jointly executed by it and the respondents as comakers, so that the respondents apparently were the guarantors of the corporation's obligation. But substantially the difference is only one of mechanics in the method of accomplishing the same purpose, and the prohibition of section 366, supra, would seem to comprehend both transactions as equally objectionable. As above recited, the respondents scheduled, in their authorizing resolution for the corporation's execution of the note in question, that the proceeds would be used in the following manner: $5,025 in payment of principal and interest of their personal note representative of a loan to the corporation under the $15,000 advancement provision heretofore discussed; $1,275 in payment of a personal advance from the respondent Dolton subject to the same limitation as to reimbursement; and the balance in purchase of equipment and for operating expense. The funds were used as "earmarked." However, since at the time the $8,500 note was executed for the stipulated purposes, the corporation had not earned any net income, the sole agreed source for repayment of advances made to it by the respondents "not in excess of Fifteen Thousand Dollars ($15,000)" — a limit not yet reached — the respondents had no right then to assert any monetary claim against the corporation. The contingency establishing the corporation's legal obligation to repay the respondents under the scope of their financial dealings had not materialized, and the respondents' appropriation of any part of the proceeds of the $8,500 note assumed the character of an advance or loan made by the corporation. As so analyzed, the corporation received no consideration for paying from the proceeds of the $8,500 note the sum of $6,300 to the respondents, *Page 888 
and their unauthorized application of such amount to their personal benefit fixes their statutory liability.
To construe section 366 otherwise than as comprehending this financial manipulation of corporate funds would place in the hands of unscrupulous directors the power to deplete the assets of a corporation by borrowing money from the corporation which they direct in violation of the statute and then defend with complete immunity against recovery because the transaction on its face did not appear to be a loan. Thus, directors could escape the prescribed liability by the mere process of causing the corporation to execute its note for indebtedness, arranging for the proceeds to be paid to it and deposited in its account, and then having it withdraw such sum for payment of their private debts. [4] It must be remembered that the respondents occupied a fiduciary relationship to the corporation, were bound to act in the utmost good faith, and must be held to strict accountability for any breaches of trust in their corporate dealings. (19 C.J.S. § 761, p. 103, et seq.) [3b] Close scrutiny of the transaction here involved reveals its true nature as an unauthorized loan or advance of corporate funds, and the subtle distinction of the above-mentioned guaranty feature with respect to the joint note here in contrast with that in the Globe case does not furnish a basis for legal sanction. Section 366 manifestly was enacted to prevent directors from taking advantage of their position to grant themselves or their colleagues unwarranted loans, and thus dissipate corporate funds in violation of their trust. In the light of these considerations the respondents' application of the "carmarked" funds — $6,300 — from the proceeds of the $8,500 note must be branded as an unauthorized loan, and so in essence within the confines of the statutory prohibition.
Upon the basis of the foregoing facts the appellant established under authority of section 366 of the Civil Code a prima facie case for relief. [5] The respondents' statutory liability to the corporation was a debt subject to levy of execution at the instance of the appellant as a judgment creditor of the corporation (Code Civ. Proc., § 542(6)), but her recovery would depend on the status of the account between the respondents and the corporation at the date of the levy or garnishment. (13 Cal.Jur. § 12, p. 11.) With reference to that point the record discloses many conflicting considerations *Page 889 
and would need substantial clarification in order to determine the rights of the parties herein. While the financial statements introduced in evidence reflecting on the respondent Dolton's cross-demand against the corporation indicate that he paid to the latter considerably more money in the aggregate than he received from it, the various discrepancies in the bookkeeping charges and credits — particularly in respect to their unchronological order of recordation — make it difficult to decipher with any degree of certainty the balance of accounts. Moreover, the aforementioned $15,000 limitation upon the return of advances made by the respondents under the terms of their agreement with the corporation must be considered in computing what offsets may properly be claimed by the respondents herein. But the present sketchy state of this phase of the record does not detract from the substantial character of the evidence introduced in support of the averments of the appellant's complaint; rather it only serves to emphasize the accounting problem as a matter properly for the determination of the court after a trial on the issues raised by the pleadings.
[6] Nor can it be said that in any event the present situation is not one for equitable intervention because the appellant has an adequate remedy at law. (Code Civ. Proc., §§ 720, 544.) As above recited, the following facts stand undisputed in the record: Appellant, in pursuance of her judgment against the corporation, caused to be served on the respondents Dolton and King a writ of execution, which was redents were examined in supplementary proceedings, each turned by the sheriff "nulla bona"; thereafter said respondenied any debt or obligation to the corporation, and each claimed an interest in the property of the judgment debtor adverse to it and to the appellant. Upon such denial of liability, continued pursuit of the statutory procedure would be of no avail to the appellant, and, with her legal remedy so effectively exhausted, she properly sought relief through an independent action in equity — a creditor's bill. Thus, the distinct bases of procedure are discussed at some length inBond v. Bulgheroni, 215 Cal. 7, 10 [8 P.2d 130]: "It is the settled law of this state that, since our statutes do provide a method of reaching such assets by supplementary proceedings, there is no longer, in cases where the statutory method *Page 890 is adequate, any ground for the interposition of equity. (Herrlich v. Kaufmann, 99 Cal. 271 [37 Am.St.Rep. 50, 33 P. 857]; Phillips v. Price, 153 Cal. 146, 148 [94 P. 617].) This rule rests upon the doctrine applicable generally to proceedings in courts of chancery, that equitable relief is available only when the plaintiff appears to be without a plain, speedy and adequate remedy at law. Where, however, the statutory proceedings supplementary to execution do not, for any reason, afford an adequate remedy, relief by creditor's bill may still be had. (Rapp v. Whittier, 113 Cal. 429, 431 [45 P. 703]; Phillips
v. Price, supra; Bonner v. Lehfeldt, 39 Cal.App. 649, 653 [179 P. 722]; Blake v. Blake, 86 Cal.App. 377, 381 [260 P. 937].) Proceedings supplementary to execution are wholly inadequate where the grantee or transferee of a judgment debtor asserts title in himself, for the reason that to make an order directing the application of property claimed by a person in his own right would be to deprive him of his property upon a summary proceeding and without due process of law. (Blake v. Blake,supra.) Where a judgment creditor claims that title under a conveyance or transfer is invalid, an issue as to such ownership and title should be properly made and tried in an appropriate action in which a judgment may be had and the parties conclusively bound. (Lewis v. Chamberlain, 108 Cal. 525, 527 [41 P. 413].)" (See, also, the authoritative discussion inBooge v. First Trust Sav. Bank, 46 Cal.App.2d Supp. 879, 881-883 [116 P.2d 503].)
The foregoing review of the record discloses a situation calling for the exercise of the court's equitable cognizance, and inasmuch as the appellant introduced proof sufficient to make out a prima facie case under the allegations of her complaint, the respondents should have been compelled to present such evidence as they might have in their defense, to the end that the court could equitably determine the respective rights of the parties litigant.
The order granting a nonsuit is reversed.
Gibson, C.J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.
Respondents' petition for a rehearing was denied October 6, 1944. *Page 891