[Civ. No. 16389.   Second Dist., Div. One.   Nov. 15, 1948.]

CYNTHIA LEWIS, as Administratrix, etc., Appellant, v. LEWIS H. BEEKS et al., Respondents.

Theodore Robinson for Appellant.

Samuel Schekman for Respondents.

YORK, P. J.—Plaintiff appeals from a judgment that she take nothing as to defendant Rhodes which was entered after the demurrer of the latter to the first amended complaint had been sustained without leave to amend.

By the instant action, plaintiff seeks to cancel four deeds purportedly executed and delivered by her intestate, Mary H. Lyons, to defendant Corrine Rhodes, it being alleged in the first amended complaint herein that on the dates when such deeds were executed, to wit: March 19, April 25 and 26, all in the year 1938, said intestate was of the age of 65 years, ill and infirm and so unsound of mind as to be wholly incapable of transacting business in respect of her property, it being alleged upon information and belief that said intestate never intended to make and deliver said deeds, but "to the contrary always thereafter thought and believed she still was the owner of said land and real property and that she retained title and possession of the same until her said death."

That said intestate died on or about June 17, 1941, and that letters of administration in her estate were duly issued on August 20, 1942, to plaintiff; that decedent left no surviving relatives except said plaintiff, Ruby Johnson and George Johnson, all first cousins of said deceased.

That at all times mentioned in the complaint, "the most confidential relations existed between said defendant Corrine Rhodes and said Mary H. Lyons, deceased," the latter reposing the "greatest confidence and trust in said defendant," and advised and sought advice and consulted with the said defendant, and said decedent believed that such defendant would deal fairly and justly with her, "in all matters and relations and things of a trusted and confidential nature."

It is then alleged upon information and belief that on or about the 19th of March, 1938, and at various other times, defendants Lewis Beeks and Corrine Rhodes "confederated and conspired together and formed a secret purpose and design and scheme to cheat and defraud the said Mary H. Lyons, deceased, and pursuant thereto procured" the deceased to execute and deliver to said Corrine Rhodes the deeds of conveyance here in question, vesting in said Rhodes the apparent legal title to the real property conveyed thereby.

That although defendant Rhodes is not a blood relative of decedent, the former prevailed upon the latter to live with her, and during the time said decedent lived with defendant, said defendant kept her "confined and separate and apart from her said First Cousins, and would not permit or allow any of them to ever see the said Mary H. Lyons, deceased, during the absence of said defendant Corrine Rhodes; that the said Corrine Rhodes kept the said Mary H. Lyons, deceased, so confined until her death as aforesaid."

That said defendant Rhodes paid no consideration for the deeds, but taking advantage of intestate's enfeebled condition and with the intent to cheat and defraud intestate, said defendant Rhodes procured her to execute said deeds without any competent legal advice and without the knowledge of the said first cousins, although said defendant had legal advice at and about the time the deeds were executed.

That by reason of said conveyances, defendant Rhodes is in possession of and has title to said real property claiming to be the sole owner thereof, and refuses to allow the relatives, this plaintiff or the estate of decedent "to have any part of the same or part of the rents, issues and profits therefrom." That the said estate and heirs at law are in equity entitled to the whole of said land and real property.

It is further alleged upon information and belief that the acts and conduct of defendants "were cunningly and cleverly committed and perpetrated in secret and behind the scenes

and in the dark to cheat and defraud the said Mary H. Lyons, deceased, out of the aforesaid lands and real property, and all and any acts or conduct that would reasonably disclose the same *was* cunningly and sneakingly and slyly kept secret from said plaintiff, and by reason of said secrecy and fraud and concealment thereof, this plaintiff had no knowledge of said fraudulent acts and conduct on the part of said defendants and did not know about them . . . and find out about the said fraud and discover said fraudulent acts until after the death of said Mary H. Lyons . . . and about the month of January, 1944, and the same could not have been discovered earlier by the exercise of reasonable diligence; and said plaintiff only found out about said acts and had reason to discover said fraud at about said time *because a certain person who knew* Mary H. Lyons . . . and this plaintiff in conversation and casually talking to said plaintiff informed her that said Mary H. Lyons, deceased, had since 1938, and before her said death in June, 1941, *said to said person* that the said defendant Corrine Rhodes, and a man named Lewis K. Beeks, . . . a lawyer, had come to her, the said Mary H. Lyons, deceased, with some papers for her to sign which would give Corrine Rhodes the right to handle her property and business for her and to collect her rent as she was physically unable to get around and attend to it herself, and on an occasion awakened her at night and had her sign some papers, and for sometime before she signed the papers the said Corrine Rhodes . . . had frequently advised . . . deceased, and begged her and importuned her to permit and allow said Corrine Rhodes . . . to take care of and handle her property affairs and business and manage the same for her, and that she, the said Mary H. Lyons, deceased, signed several papers at the request and insistence of said Corrine Rhodes . . . which papers had been presented to her purporting to give her authority to manage and take care of her property and business affairs, and that the said Corrine Rhodes and Lewis K. Beeks, defendants, said to her also that it was better for her to let Corrine Rhodes see after her business and property as they were all there in the same house together anyway; the said Mary H. Lyons, deceased, being at said time residing in the house and home of the said defendant Corrine Rhodes, and that the defendant Lewis K. Beeks, was introduced to her as a lawyer for the family and that he would prepare the papers so she would be protected and that the papers would be notarized and put in proper legal form so said

defendant Corrine Rhodes . . . could act for her and take care of her business affairs and property and collect her rent she being feeble and not physically able to go to Los Angeles to collect her rent, where her house was located, that she the said Mary H. Lyons, deceased, signed the papers there being several of them so the said Corrine Rhodes, defendant, could take care of her property and business, and on an occasion also signed some papers so that the said Corrine Rhodes, defendant, could go to court and act for her in her place (as administratrix) when her Aunt Amanda died leaving some property for her. . . .

"That after said plaintiff had been informed in the manner as aforesaid she became suspicious and inquisitive in respect to the good faith of the said Corrine Rhodes . . . in dealing justly, fairly and honestly with the said Mary H. Lyons, deceased, concerning her property and business affairs, well knowing that the said Lewis K. Beeks had been disbarred from the practice of law prior to 1938 for his dishonesty in respect to property and money matters of his clients; whereupon said plaintiff commenced to inquire and by reason thereof ascertained that the said Corrine Rhodes, defendant, relied upon the spurious legal advice and fraudulent encouragement of the said Lewis K. Beeks, defendant, to promote the conspiracy, plan and scheme to cheat, steal and defraud the said Mary H. Lyons, deceased, out of her said real property.

"That upon the most diligent inquiry on the part of said plaintiff, said plaintiff was only able to find out in January, 1944, that the said defendants had fraudulently and with intent to cheat, steal and defraud, procured the said Mary H. Lyons, deceased, to convey those said parcels and lots of land and real property by the aforesaid deeds of conveyance. That said plaintiff at all times herein mentioned resided in Los Angeles, California, and said Mary H. Lyons, deceased, resided with said defendant Corrine Rhodes, in Venice, California, and said plaintiff had no access to said Mary H. Lyons . . . inasmuch as the said defendant Corrine Rhodes had advised her not to visit with or come to see the said Mary H. Lyons, unless she was present, and that after the said death of the said Mary H. Lyons . . . said defendant Corrine Rhodes took full charge of her funeral and neglected and failed to inform said plaintiff when the funeral would be held. That after the death of the said Mary H. Lyons . . . said plaintiff sought to talk with the said Corrine Rhodes about the property affairs of said Mary H. Lyons . . . but was met with stony

silence on the subject or was told she left nothing; that at no time did the said defendant ever say to said plaintiff that the said Mary H. Lyons had deeded her the aforesaid properties and lands.

"That upon the aforesaid information ascertained from the said acquaintance, said plaintiff was convinced that the said transactions, negotiations and signing of papers as herein alleged between the said Corrine Rhodes and Lewis K. Beeks, and Mary H. Lyons, deceased, were and must be dishonest and designed to cheat, steal and defraud her out of her said real property. That said plaintiff not being conversant and learned in matters pertaining to real estate and the legal management thereof, thereupon sought advice upon the subject and employed counsel herein to file and prosecute an action February 23, 1944, in order to cancel said fraudulent deeds of conveyance and obtain relief" therefrom. That said counsel after investigation discovered that said deeds had been executed on the dates above mentioned.

Then follows an allegation based upon information and belief that defendant Beeks "had at some time prior to the 19th day of March, 1938, been a practicing attorney in the State Courts of California"; that since said date he "has been disbarred from the practice of law . . . by reason of his acts involving moral turpitude and dishonesty in connection with his transactions with clients. That said plaintiff is further informed and believes and upon such information and belief alleges, that the said Lewis K. Beeks at all times herein mentioned in connection with said deeds of conveyance encouraged, aided and abetted and fully legally advised the said Corrine Rhodes . . . and confederated and conspired with her to defraud the said Mary H. Lyons, deceased, in respect to her said property, all for his personal gain and profit in these premises."

Plaintiff then prays for a judgment declaring that the property conveyed should inure to the benefit of the estate of Mary H. Lyons; that the deeds conveying the same be declared null and void as having been obtained by fraud and mistake of law; for a declaration of rights of said estate in said properties; for cancellation of the deeds and for an accounting of the rents from said properties.

The demurrer of defendant Rhodes to said first amended complaint which was sustained without leave to amend, was made upon the following grounds:

I. That said complaint does not state facts sufficient to constitute a cause of action in that in each cause of action it is alleged that some time in 1938 decedent Mary H. Lyons conveyed the property mentioned in the complaint to the defendant Rhodes. Nowhere in the complaint is there any allegation that either plaintiff, her ancestor, predecessor, or grantor was seized or possessed of the property in question within five years before the commencement of the action.

II. The complaint further fails to state a cause of action in that it does not show why plaintiff was unable to ascertain the alleged fraudulent transaction until January, 1944. The allegation "that the same could not have been discovered earlier by the exercise of reasonable diligence" is a pure conclusion of law and is not an allegation of fact.

III. That plaintiff's attempt to delineate the manner in which she discovered the alleged fraud fails to state facts sufficient to constitute an action for fraud in that the entire recital purports to quote a third person. Such quotations could not be the basis for any proof for the evident and obvious reason that such testimony would be hearsay and could not be permitted for any purpose.

IV. That the complaint is uncertain, ambiguous and unintelligible for the same reason.

The main ground of the general demurrer to the complaint herein is that the action is barred by the provisions of section 318 of the Code of Civil Procedure, to wit:

"No action for the recovery of real property, or for the recovery of possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the property in question, within five years before the commencement of the action."

Appellant urges that "where fraud or a fiduciary relationship exists, the Statute of Limitations contained in said section (318) is no bar to an action commenced after the expiration of five (5) years. An action may be commenced three (3) years after the discovery of the fraud." (Code Civ. Proc., § 338, subd. 4.)

The complaint alleges that the properties were conveyed March 19, April 25 and 26, 1938; that intestate (the grantor) died June 17, 1941; that appellant was appointed administratrix on August 20, 1942, and that it was not until January, 1944, that she discovered the so-called fraud of respondents. The instant action was commenced November 2, 1946.

It thus appears that, if the action is one for the recovery of possession of the land conveyed it is barred by section 318, *supra,* and the demurrer on that ground is sound. On the other hand, if it is primarily an action for fraud, section 338, *supra,* is applicable and the complaint is not demurrable on the ground of the bar of the statute of limitations.

"As heretofore observed, the nature of a cause of action is to be determined from the object and purposes of the suit and not from the evidence necessary to maintain it. Although the main ground of an action of equitable cognizance is fraud or mistake, whereby the defendant has obtained legal title to land in controversy, and the chief contention is with respect to the fraud or mistake alleged, yet if plaintiff alleges facts which show as a matter of law that he is entitled to the possession of the property, and a part of the relief asked is that he be let into possession, or that his title to the land be quieted, the action is in reality for the recovery of real property, and is not barred except by the five-year limitation contained in section 318 of the Code of Civil Procedure. . . . So an action to set aside a fraudulent deed, when the effect of it is to restore the possession of the premises to the defrauded party, is regarded as one for the recovery of real estate within the meaning of the statute. (*Oakland* v. *Carpentier,* 13 Cal. 543.) This rule is limited to cases which involve the features of an action in ejectment or to quiet title. (*Hart* v. *Walton,* 9 Cal.App. 502 [99 P. 719].) *The rule clearly does not apply where the case presents a simple question of fraud or mistake, and there is no attempt to recover possession or establish title otherwise than by nullifying the act procured by fraud or mistake. (Murphy v. Crowley,* 140 Cal. 141 [73 P. 820].)'" (Emphasis added; 16 Cal.Jur. § 46, p. 437.)

The leading case in this state on that subject appears to be *Murphey* v. *Crowley, supra,* (140 Cal. 141) where, defendant being in possession, the action was brought to obtain,—in addition to other relief i. e., to quiet plaintiff's title and to be let in possession,—the setting aside of a certain deed to a part of the premises, plaintiff basing her right to recover upon allegations of undue influence exerted in obtaining such deed from her father during his lifetime.

In said case the court declared that, the question was whether the cause of action was to be treated as one "solely for relief on the ground of fraud," or on the contrary was "to be considered as an action for the recovery of real prop-

erty, or for the possession thereof,'' and held that ''although the main ground of the action is fraud or mistake whereby the defendant has obtained the legal title to the land in controversy, and the chief contention between the parties is with respect to the fraud or mistake alleged, yet, if the plaintiff alleges facts which show, as matter or law, that he is entitled to possession of the property, and a part of the relief asked is that he be let into possession, or that his title to the land be quieted, the action is in reality for the recovery of real property,'' (p. 146) and is not barred by the three-year statute applicable to fraud cases, but only by the five-year limitation statute applicable to actions for the recovery of real property.

The prayer in the instant complaint asks for a declaration of the court that the lands so conveyed should inure to the benefit of the estate of Mary H. Lyons; that the deeds were obtained by fraud and are null and void and mere legal nullities; for a declaration of the rights of the parties in respect to said lands and that said estate be adjudged the true and lawful owner thereof; for cancellation of the deeds, and for an accounting of rents and profits.

There is no attempt made in the complaint here in question to recover possession or establish title to the realty conveyed otherwise than by nullifying the act procured by fraud. As a result, section 338, subdivision 4, Code of Civil Procedure, is applicable and the action was brought in time.

While the complaint here in question is anything but a model pleading, we believe it sufficiently states a cause of action in fraud.

As stated in 11B California Jurisprudence, page 386, section 963: ''Whenever decedent might have done so, his representative may sue to set aside a conveyance or transfer obtained from decedent by means of the other party's undue influence, fraud, menace or duress, or a conveyance which is invalid for want of capacity in the decedent grantor. Since the fraud and wrong were committed on the decedent and in his lifetime, he might have brought suit to recover the property; *and his personal representative not only has the power, but it is his duty to sue for the recovery thereof as part of the estate.* It is not necessary that it be shown that there is a deficiency of assets wherewith to pay creditors, or that the property is needed for purposes of administration.''

The complaint was attacked by demurrer on the ground that it did not show why plaintiff was unable to ascertain the alleged fraudulant transaction until January; 1944.

The complaint alleges a confidential relationship between respondent Rhodes and decedent, which finds basis in the fact that said Rhodes took decedent to her home and there kept her confined refusing access to decedent's relatives and friends. It is also alleged that respondents zealously concealed their fraudulent acts in procuring decedent to convey her property to Corrine Rhodes which was done by means of a false representation by said respondents to decedent that she was merely giving respondent Rhodes the right to handle decedent's property for her.

As stated in 12 California Jurisprudence, page 799: "Delay in discovering fraud may be excused by the existence of confidential relations between the parties or by reason of the fact that the one defrauded was misled by further false representations. For, as it has been said, 'It does not lie in the mouth of a party to complain of the want of promptness of his adversary in discovering the fraud and proceeding to rescind, where failure to discover it is due to such party's concealment in violation of a duty owed to the person from whom the facts are concealed. Equity awards the diligent; but this rule has no application to the diligent in concealment and deceit.' (*Mabry* v. *Randolph*, 7 Cal.App. 421 [94 P. 403].)"

In *Consolidated R. & P. Co.* v. *Scarborough*, 216 Cal. 698, 702 [16 P.2d 268], it is stated: "It is not enough that the plaintiff merely avers that he was ignorant of the facts at the time of their occurrence, and has not been informed of them until within the three years. He must show that the acts of fraud were committed under such circumstances that he would not be presumed to have any knowledge of them—as that they were done in secret or were kept concealed; *and he must also show the times and the circumstances under which the facts constituting the fraud were brought to his knowledge*, so that the court may determine whether the discovery of these facts was within the time alleged."

In *Anderson* v. *Thacher*, 76 Cal.App.2d 50, 70 [172 P.2d 533], the following quotation from *Victor Oil Co.* v. *Drum*, 184 Cal. 226, 241 [193 P. 243], appears:

" 'The courts will not lightly seize upon some small circumstance to deny relief to a party plainly shown to have been actually defrauded against those who defrauded him

on the ground, forsooth, that he did not discover the fact that he had been cheated as soon as he might have done. It is only where the party defrauded should plainly have discovered the fraud except for his own inexcusable inattention that he will be charged with a discovery in advance of actual knowledge.' "

Appellant alleges in her complaint that she discovered the fraud through conversations with an acquaintance of decedent.

In a complaint sounding in fraud, allegations as to matters which are peculiarly within the knowledge of the defendant, and as to *which the plaintiff can learn only from statements made to him by others, may be made on information and belief*; less certainty is required in pleading such facts than in pleading facts presumptively or actually within the knowledge of the plaintiff. (12 Cal.Jur. 805.)

"It is well settled in this state that where the ground of contest is undue influence, it is not sufficient for the pleader to merely allege the legal conclusion of undue influence, but facts must be pleaded from which the court may determine as a matter of law whether the facts so pleaded constitute the alleged undue influence. (Citing authorities.) . . . The rule of the authorities above cited, which requires the allegation of facts where fraud or undue influence is the issue, does not require the allegation of evidentiary facts, but only that the ultimate facts must be pleaded. . . . It must be deemed, therefore, not to exclude conclusions of fact but only conclusions of law." (*Estate of Bixler,* 194 Cal. 585, 589 [229 P. 704].)

Although, as heretofore stated, the complaint herein is not a model pleading from any standpoint, it is sufficient against both the general demurrer on the stated grounds, and the special demurrer for uncertainty and ambiguity, to state a cause of action for fraud.

For the reasons stated, the judgment appealed from is reversed.

Doran, J., and White, J., concurred.