[Civ. No. 46195. Second Dist., Div. Five. Sept. 15, 1975.]

CREDIT MANAGERS ASSOCIATION OF
SOUTHERN CALIFORNIA, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
SECURITY PACIFIC NATIONAL BANK et al.,
Real Parties in Interest.

**COUNSEL**

Roger K. Patterson for Petitioner.

No appearance for Respondent.

Gibson, Dunn & Crutcher, Stephen M. Blitz, Robert A. Miller and John R. Lucas, Jr., for Real Parties in Interest.

## Opinion

**LORING, J.**[*]—Credit Managers Association of Southern California (Credit Managers) filed a petition for writ of mandate naming the Superior Court of Los Angeles County (Court) as respondent and Security Pacific National Bank, a national banking association, formerly known as Security First National Bank, a national banking association (Bank), First Small Business Investment Company of California (Investment Company), and Mordy and Company (Mordy) as the real parties in interest. We issued an alternative writ and Mordy appeared by answer and demurrer. Bank and Investment Company did not respond.

The petition alleges that on July 15, 1974, Credit Managers filed a complaint for "Breach of Fiduciary Duty and Conspiracy" in respondent Court to which Bank and Investment Company filed an answer but Mordy filed a demurrer, Court sustained the demurrer and Credit Managers filed a first amended complaint for "Breach of Fiduciary Duty Negligence and Conspiracy" on October 23, 1974 (a copy of which is attached to the petition). Bank, Investment Company and Mordy all demurred and the demurrer of Mordy was sustained on December 9, 1974, with 30 days to amend. The demurrers of Bank and Investment Company were placed off calendar. Credit Managers served certain interrogatories (attached as an exhibit to the petition and referred to in detail, *infra*) on Mordy under the provisions of Code of Civil Procedure section 2030, subdivision (a) and applied to the court for an extension of time to file its second amended complaint because Credit Managers "in order to amend the First Amended Complaint" "must receive answers to interrogatories heretofore served upon defendant . . ." Mordy. Mordy applied for a protective order and the Court granted Credit Managers' request for an extension of time but also granted Mordy's request for a protective order relieving Mordy of any obligation to answer the interrogatories. Credit Managers then filed the instant petition seeking a peremptory writ to compel Court to vacate its protective order.

### Facts

It appears from the documents filed herein and from our own examination of the Court's original records in action No. C 94032 that Credit Managers first amended complaint alleged that it was the

---

[*]Assigned by the Chairman of the Judicial Council.

assignee by written assignment of the causes of action filed upon;[1] that the true capacities of Bank Investment Company and Mordy were unknown to Credit Managers; that on August 21, 1971, Jer Merai Lingerie Co., a corporation (Jer Merai), executed a promissory note to Security Bank in the sum of $210,000; that on November 18, 1971, Jer Merai was a solvent viable corporation with "well established markets for its lingerie products and good will in the industry" and that it had a fair market value of $1 million. That the aforesaid promissory note became due on November 18, 1971, at which time Bank demanded that Jer Merai implement written management policies or Bank "would foreclose the above alleged note and close down the operation of Jer Merai" that the policy set forth by Bank was that Jer Merai employ Mordy "as its business consultant" that Mordy was the agent of Bank and everything done by Mordy was done "in the scope of that agency" that as the result of Bank's demand Jer Merai employed Mordy to represent Bank in the management of Jer Merai that "as a direct and proximate result of the above alleged facts "Defendants and each of them" (i.e., Bank, Investment Company, and Mordy) "owed" Jer Merai "a fiduciary duty of good faith and fair dealing in the management of said corporation" that they "breached their fiduciary duty of good faith and fair dealing in that they, over the objection of 'Jer Merai' implemented or caused to be implemented strict and oppressive credit policies sale procedures, and inventory policies towards the distributions of the products of said corporation" and by acting "in disregard of the affairs of the corporation," that as a proximate result of the acts of "the defendants and each of them" the assets of Jer Merai "were grossly mismanaged and wasted, rendering it insolvent, all to plaintiff's further damage in the sum of $1,000,000."

The second cause of action merely realleged the same facts with the further allegation that the three defendants (Bank, Investment Company and Mordy) "agreed" to institute the aforesaid oppressive policies at the instance and request of Bank "without heed or regard to the wishes or vote of the directors or shareholders of Jer Merai" and "in complete disregard of the affairs of the corporation." The third cause of action alleged that the defendants acted negligently and carelessly in the management of Jer Merai. The fourth cause of action alleged a conspiracy between the defendants to mismanage Jer Merai as alleged.

---

[1]From the sum total of the documents it appears that Credit Managers is an assignee for benefit of creditors of Jer Merai Lingerie Co., a corporation.

The demurrers of Bank, Investment Company and Mordy were predicated, inter alia, on the theory that the complaint failed to state a cause of action because it did not allege the wrongdoing or mismanagement by Mordy with sufficient particularity.

The interrogatories to which the court's protective order applied required Mordy to supply information regarding its own organization, i.e., details regarding whether it was a corporation, partnership, etc., the type of business it was engaged in and a series of questions requesting specific details regarding its conduct in managing the affairs of Jer Merai. These latter questions would appear to serve a dual purpose: (1) They would supply Credit Managers with information regarding Mordy's management of the affairs of Jer Merai, (2) they would also preclude Mordy from making other claims at time of trial. In other words the questions would "box in" Mordy's defense.

Mordy seeks to uphold the protective order of Court on the ground that California law does not permit discovery by a plaintiff for the purpose of determining whether or not he has a cause of action or to discover facts to amend a pleading to allege a cause of action.

## DISCUSSION

In its argument in response to the alternative writ herein Mordy relies on a line of cases which purportedly hold that a plaintiff is not entitled to resort to discovery to discover whether or not it has a cause of action. Mordy argues: "As will appear, such [protective] order is entirely justified having been made in the context of (1) a series of successful general demurrers to petitioner's attempts to proceed upon the basis of wholly conclusionary and factually unsupported allegations of 'breach of fiduciary duty' which this very Court has held are insufficient as a matter of law (*Zumbrun* v. *University of Southern California* (1972), 25 Cal.App.3d 1, 13-14 [101 Cal.Rptr. 499, 51 A.L.R.3d 991]; see also *Gonsalves* v. *Hodgson* (1951), 38 Cal.2d 91, 97-99 [237 P.2d 656]); (2) multiple inconsistencies in verified pleadings as to the alleged factual relationships between the several defendants *and plaintiff* (see Mordy's Notice of Hearing of Demurrer and Notice of Motion and Motion to Strike, Exhibits 1 and 2 to this Memorandum, respectively) (3) petitioner's wholly unexplained and incomprehensible position (in *verified* pleadings) that it *possesses* a viable cause of action for an alleged breach of a claimed fiduciary duty while conceding that it knows of absolutely no facts to support such a charge and asserting that only defendants can

furnish to it information sufficient to show (a) that *any* fiduciary relationship existed between the several parties and (b) that one or more of the several defendants breached such duty (See, *e.g.,* Mordy's Motion for Protective Order, Exhibit E to Petition and Mordy's Opposition to Petitioner's Motion for Extension of Time, Exhibit 19 hereto); (4) petitioner's refusal to amend in any manner its purported 'breach of fiduciary duty' count notwithstanding the sustaining of the original demurrer (See Mordy's Demurrer to the First Amended Complaint, Exhibit 1 hereto, at pp. 8-14); (5) petitioner's express *admission* that it knows of *no facts whatsoever* to support its admittedly unfounded and highly questionable charges of defendant's alleged 'breach of fiduciary duty' and 'civil conspiracy' (*See,* e.g., Petition, paragraph 8); (6) petitioner's persistent failure to obtain even sufficient facts relative to such charges to even permit pleading upon information and belief; and, even assuming it is conceivable one allegedly injured by an alleged 'breach of fiduciary duty' can in fact be totally ignorant of *any* facts to support such a charge, (7) the pendency since February, *1973* of a *prior action* (L.A.S.C. No. C 32935) involving the *identical* legal claim of Mordy's alleged 'breach of fiduciary duty' to plaintiff's assignor and its utter failure to pursue *that* opportunity for inquiry into the possible factual bases for petitioner's claim of Mordy's alleged' wrongdoing." (Italics in original.)

The prior action which Mordy refers to in part (7) (L.A.S.C. No. C 32935) appears (from the record before us) to have been an action by Bank against Gerold D. Lundahl and Marlene T. Lundahl, husband and wife, who were the sole stockholders of Jer Merai and who had guaranteed payment of the $210,000 promissory note. Mr. & Mrs. Lundahl filed a verified cross-complaint in action No. C 32935 making substantially the identical allegations as were made by Credit Managers in the complaint and first amended complaint in action No. 94032. The demurrer of the cross-defendants to the Lundahl cross-complaint in action No. C 32935 appears to have been sustained on the ground, inter alia, that the Lundahls were attempting to assert a derivative cause of action on behalf of Jer Merai which may not be asserted by stockholders. The argument of course ignored the fact that Lundahls were sued by Bank as guarantors of the note not as stockholders of Jer Merai and ignored the principle that normally a guarantor may assert any defense on the guaranty which is available to the debtor on the principle obligation, i.e., if the debtor is not indebted on the principle obligation the guarantor is not liable on the guaranty. (See 46 Cal.Jur.2d, Suretyship and Guaranty, § 63, p. 311.) However, the rulings of the

Court in action No. C 32935 are not involved in these proceedings. We refer to the problem here only to reiterate that respondent Court in the rulings now before us should not have been unduly influenced by any erroneous ruling in action No. C 32935.

■ In the case before us (No. 94032) Credit Managers apparently sues as assignee of Jer Merai and not as assignee of the Lundahls. The validity of the protective order here in question must be determined by the record in case No. 94032 not by the record in case No. C 32935. The record here demonstrates that Credit Managers is itself suing in a representative capacity as assignee of Jer Merai for the benefit of the creditors of Jer Merai other than Bank. Although the first amended complaint does not specifically so allege the entire record justifies that conclusion which we believe will not be seriously disputed by the parties. Credit Managers therefore is in the unfortunate position of suing on a cause of action of which it had and could have no personal knowledge. It obviously relies at least in part on the verified cross-complaint of the Lundahls in case No. C 32935. This is a case where the defendant Mordy has far greater knowledge of the facts than Credit Managers.

Mordy in support of its demurrer to the original complaint argued that "notwithstanding its designation as a 'Breach of Fiduciary Duty' plaintiff's complaint, *properly construed,* sounds in fraud and thereon must meet the standards of specificity required of fraud claims." (Italics ours.) Mordy argued that "Fraud connotes conduct which is reprehensible and hence a party accused of fraud must be given specification of the conduct alleged to be fraudulent. It is axiomatic that fraud is never presumed and accordingly must be specifically pleaded" citing a number of California cases.[2] Mordy argued that general allegations are not sufficient citing cases.[3] In support of its demurrer to the first amended complaint, Mordy argued that the first amended complaint did not cure the aforesaid defects in the original complaint and further argued that the allegation of the first amended complaint that Jer Merai "employed" Mordy negated any possibility of a fiduciary relationship since "employment" implies a contract and the existence of a contracted relationship negates any possibility of a fiduciary relationship. Mordy concluded that because the first amended complaint used the word "employed" there

---

[2]The cases cited are: *Davis* v. *Rite-Lite Sales Co.,* 8 Cal.2d 675 [67 P.2d 1039]; *Scafidi* v. *Western Loan & Bldg. Co.,* 72 Cal.App.2d 550 [165 P.2d 260]; *Horton* v. *Horton,* 115 Cal.App.2d 360 [252 P.2d 397]; *Sides* v. *Sides,* 119 Cal.App.2d 349 [259 P.2d 708].

[3]*Scafidi* v. *Western Loan & Bldg. Co., supra,* 72 Cal.App.2d 550, 553; *Hershey* v. *Reclamation District No. 108,* 200 Cal. 550 [254 P.2d 542]; *Donze* v. *Donze,* 88 Cal.App. 769 [264 P. 294]; *Johnson* v. *Fletcher,* 97 Cal.App. 153 [274 P. 1001].

really was no fiduciary relationship. By such legerdemain Mordy successfully circumvented the fundamental principle that on demurrer the court is required to accept the allegations of the complaint as true. "But provisionally, and solely for the purpose of testing the question of law raised . . . all material, issuable facts properly pleaded in the complaint are admitted, however improbable they may be" (Witkin, Cal. Procedure (2d ed.) Pleading, § 800, p. 2413). It is true that Mordy argued that the allegation that it had a .fiduciary duty to Jer Merai was a conclusion of law which was not admitted by demurrer. However, the first amended complaint alleged much more than a mere conclusion of law. It alleged, at least inferentially, that Mordy as "business consultants" took over the "management of Jer Merai" that the defendants and each of them "breached their fiduciary duty of good faith and fair dealing in that they agreed to institute the above alleged strict and oppressive credit policies, sales procedures, and inventory policies towards the distributors of the products of said corporation . . . *without heed or regard to the wishes or votes of the directors or shareholders of said corporation* and acting in complete disregard of the officers of the corporation." (Italics ours.) This clearly constitutes more than an allegation of a conclusion of law. Taken as a whole, the complaint, in effect, alleges that Mordy was placed in such complete management control of the corporation that it was able to, and did, overrule and supplant the board of directors and the shareholders (Mr. & Mrs. Lundahl) of the corporation. Various memoranda apparently produced by Bank (in response to interrogations) which were produced by Mordy in its response to the petition herein contain recitals which if believed would sustain a finding of fact supporting the aforesaid allegations of the complaint.

We are not here required to determine whether or not the first amended complaint alleged a cause of action with sufficient specificity to withstand a special demurrer. That issue is not involved in these proceedings. We are here only concerned with the question of whether or not the complaint alleged a cause of action in such detail that the granting of a protective order relieving Mordy of an obligation to answer interrogatories and denying Credit Managers all right of discovery constituted an abuse of discretion. In our view, it did.

Credit Managers' first amended complaint directly or indirectly alleged, in effect, that Jer Merai, against its will, was compelled by Bank to employ Mordy as business consultant and that it was compelled to surrender to Mordy complete management control of Jer Merai to such

an extent that Mordy was able to overrule and supplant the board of directors and shareholders in its operation of the business. Under such circumstances in our view a trial court could properly conclude that Mordy had the same fiduciary obligation to Jer Merai and its creditors and to the stockholders of Jer Merai that the officers and directors of Jer Merai would have had to such creditors and such shareholders. (Witkin Cal. Procedure (2d ed.) Pleading, § 637, p. 2265.) Directors of a corporation are trustees of the stockholders and indirectly for the creditors. (*Winchester* v. *Howard*, 136 Cal. 432 [64 P. 692, 69 P. 77]; *Title Ins. etc. Co.* v. *California Dev. Co.*, 171 Cal. 173 [152 P. 542]; *Wulffen* v. *Dolton*, 24 Cal.2d 878 [151 P.2d 840]; *Lowe* v. *Copeland*, 125 Cal.App. 315 [13 P.2d 522]; *Jones* v. *H. F. Ahmanson & Co.*, 1 Cal.3d 93 [81 Cal.Rptr. 592, 460 P.2d 464]; *Armstrong Manors* v. *Burris*, 193 Cal.App.2d 447 [14 Cal.Rptr. 338].)

In *San Pedro Lumber Co.* v. *Reynolds*, 121 Cal. 74, 82 [53 P. 410], the Supreme Court speaking of the duties of a corporate manager said: "Reynolds was the agent of the corporation. In him were vested great powers, and upon him were cast grave responsibilities. His position was a position of trust, and in the performance of that trust he was required to exercise reasonable skill, diligence, and care, and to act in the highest good faith toward his principal."

In *Estate of Arbuckle*, 98 Cal.App.2d 562 at page 568 [220 P.2d 950, 23 A.L.R.2d 372], the court said: "Constructive fraud usually arises from a breach of duty where a relation of trust and confidence exists. [Citation.] A confidential relation may be said to exist whenever trust and confidence is reposed by one person in the integrity and fidelity of another. [Citations.]

"The opening statement asserted facts showing that Bell was decedent's trusted agent and business manager. Such a relationship is a confidential one, fiduciary in character. [Citations.] The acts of an agent are judged with almost the same strictness as those of a trustee. [Citation.]"

Although the first amended complaint does not allege the fact, the record discloses documentary evidence filed by Mordy in response to the alternative writ which indicates that Mordy exercised such dominion and control over the corporate affairs of Jer Merai that it ordered the stockholders (who were employed by the corporation) "off salary." It is difficult to imagine how any person could have exercised greater control over the corporate affairs than to order the sole stockholders off salary.

The first amended complaint further alleges, in effect, that as a proximate result of the management policies of Mordy, in a relatively short space of time, Mordy reduced Jer Merai from a business entity with a fair market value of $1 million to a state of insolvency. To say that such a complaint does not sufficiently state a cause of action to entitle the complainant to undertake discovery and that discovery should be denied is in our view a denial of the obvious. Mordy's argument that the complaint must allege acts of fraud with specificity ignores two well established and widely recognized principles: (1) where breach of fiduciary duty is charged the fiduciary has the burden of justifying his conduct (*Solon* v. *Lichtenstein*, 39 Cal.2d 75, 81 [244 P.2d 907]; *Rahim* v. *Akbar*, 92 Cal.App.2d 383, 391 [207 P.2d 80]; see also *South* v. *Wishard*, 146 Cal.App.2d 276, 283-285 [303 P.2d 805]). We are not aware of any rule of pleading which requires a plaintiff to allege in his complaint any fact which the defendant has the burden of proving at trial; and (2) a plaintiff need not plead facts with specificity where the facts are within the knowledge and control of the defendant and are unknown to plaintiff. (*Lewis* v. *Becks*, 88 Cal.App.2d 511, 521 [199 P.2d 413]; *Greenberg* v. *Hollywood Turf Club*, 7 Cal.App.3d 968 [86 Cal.Rptr. 885]; *Boeseke* v. *Boeseke*, 255 Cal.App.2d 848, 852 [63 Cal.Rptr. 651].)

We think these rules are particularly relevant where the complaint by Credit Managers alleges in effect that Mordy exercised such dominion and control in its management of the business that it was able to overrule and supplant the board of directors and stockholders. Under such circumstances, it is not unreasonable to hold Mordy to the same fiduciary obligations to the stockholders and creditors that the officers and directors would have had to the stockholders and creditors, but for such usurpation of control. As assignee for the benefit of creditors, Credit Managers was never in a position to show the facts with the particularity that they were known to Mordy.

Mordy argues that the law of California prohibits a plaintiff from use of discovery to determine whether or not it has a cause of action citing several cases including *Chicago Title Ins. Co.* v. *Great Western Financial Corp.*, 69 Cal.2d 305 [70 Cal.Rptr. 849, 444 P.2d 481]. Mordy argues that "It would be patently unfair to require Mordy to spend the time and money to respond to discovery for the benefit of a plaintiff which has repeatedly, in verified pleadings, been unable to establish that it has a cause of action against Mordy and particularly where plaintiff concedes that it is utterly uncapable of pleading a valid second amended complaint without discovery."

We think the argument assumes too much. It is manifest that the complaint states a cause of action against general demurrer. Credit Managers obviously needs additional information because Mordy has filed a demurrer demanding amendment to allege facts which are within the knowledge of Mordy. Credit Managers is correct in relying on *Los Angeles Cemetery Assn.* v. *Superior Court,* 268 Cal.App.2d 492 [74 Cal.Rptr. 97]. In our view, the victim of a wrongdoer who successfully conceals his misdeeds has as much right to, and is in for greater need of discovery than the victim who is fully advised of all of the details of the wrong. This is particularly true where the wrongdoer is a fiduciary who has the burden of giving an account of his stewardship. It is not true that a litigant is only entitled to discovery if he does not need it.

We conclude, as a matter of law, that respondent court committed error in concluding that Credit Managers had not alleged sufficient facts to sufficiently state a cause of action which would entitle Credit Managers to undertake discovery and that consequently the granting of a protective order to Mordy was an abuse of discretion. Mandate is an appropriate remedy. (*Hays* v. *Superior Court,* 16 Cal.2d 260 [105 P.2d 975]; *State Farm, etc. Co.* v. *Superior Court,* 47 Cal.2d 428 [304 P.2d 13]; *Simmons* v. *Superior Court,* 96 Cal.App.2d 119 [214 P.2d 844, 19 A.L.R.2d 288].)

Let a peremptory writ of mandate issue directing respondent court to vacate and set aside its restraining protective order dated February 19, 1975, relieving Mordy of the obligation to answer the interrogatories propounded to it by Credit Managers and to take such further action as may be consistent with the views expressed herein.

Ashby, Acting P. J., and Hastings, J., concurred.

The petition of real party in interest Mordy for a hearing by the Supreme Court was denied November 12, 1975.