[Civ. No. 13709.   First Dist., Div. Two.   Sept. 24, 1948.]

MINOR R. LUNT et al., Respondents, v. ROSE BORIS et al., Appellants.

Carroll, Davis & Freidenrich and Wm. Steinberg for Appellants.

Crist & Beane for Respondents.

GOODELL, J.—This is an appeal from a decree quieting the title of respondents to a piece of improved real property in Soledad, 160 feet by 290 feet in area, known as the Soledad Auto Court. On the same record there is presented an appeal from an order made after final judgment in an earlier case.

Respondents were the beneficiaries of a deed of trust securing a note for $13,000, standing against the property. At a trustee's sale they bid it in for the face of the note, and after title vested in them they brought this suit.

There was an earlier lawsuit between the same parties which was decided on appeal by this court in *Lunt* v. *Boris,* 77 Cal.App.2d 368 [175 P.2d 20] wherein the antecedent facts are stated.

In their answer herein appellants deny respondents' title and plead that this action is barred by the judgment in the first case; that respondents are seeking to circumvent that judgment; that it "is res judicata of the issue raised in the present action, and that the present action is intended to nullify and vitiate" that judgment.

One answer to this position is that "Matters not in issue in the previous action are not res adjudicata" (15 Cal. Jur. pp. 134-5) and "Where the fact, condition, status, right or title is not fixed and permanent in its nature, an adjudication, though conclusive of the situation at the time of its rendition, is not conclusive as to what it may be at some subsequent time, in so far as this may be affected by circumstances subsequently occurring or arising." (15 Cal.Jur. pp. 154-5).

On January 1, 1942, Palo Alto Building Company, the owner of the property, executed a note for $13,000 to respondents, secured by a deed of trust. On July 1, 1942, when appellants acquired title from that company, the deed of trust had not been recorded (it was recorded on August 24, 1942).

The first action was commenced on June 29, 1943. The note was then in default and the purpose of that action was to obtain possession under a provision in the trust deed entitling

the beneficiaries to possession in such event. It was established therein that appellants had acquired their title without consideration and with knowledge of the trust deed. The judgment therein, entered on November 22, 1944, awarded possession to respondents, and an appeal was taken.

Shortly afterward respondents initiated proceedings for the sale of the property under the power contained in the trust deed. At the sale held on February 10, 1945, respondents bid in the property, and a trustee's deed issued the same day. Thus they acquired title by enforcing their security while the appeal was pending, and almost two years before it was decided.

The issues in the two cases are entirely different. The first action dealt with *possession* of the property at a time when appellants admittedly held title, while the present action deals with *title* to the property after appellants' divestiture by the trustee's deed, following proceedings carried on *after* the first judgment. The case comes squarely within the rules quoted above from 15 California Jurisprudence, pages 134-5 and 154-5, and there is no merit whatever to the contention that the first judgment is res judicata of the issue in this case.

Within the issues of the original case all the court had to find was (1) that a default existed, and (2) that appellants had acquired title with notice. It followed therefrom that respondents were entitled to possession. However, the parties entered into a stipulation as to the respondents' duty in the event of payment of the $13,000 note. Because of this stipulation, and "Notwithstanding the purely possessory character of the action and its narrow issues," as we said in 77 Cal.App. 2d 371, "the court made a declaration of the rights and duties, of the parties," the purport of which was that upon the payment to respondents of the $13,000 plus interest, attorney fees, costs, and other items, respondents should clear off certain liens and encumbrances. In their closing brief in the first appeal appellants conceded "that were the judgment reversed in their favor and a retrial had, the results would be practically the same except that the judgment would be modified to permit appellants to regain possession of the properties after they would have performed . . . Consequently, appellants are willing to have the judgment affirmed" provided there were certain amplifications. Accordingly we affirmed the judgment, directing that the following be added to the judgment: ". . . if and when the defendants . . . perform all the conditions on their part to be performed as

hereinabove set forth, said plaintiffs . . . shall thereupon deliver back to said defendants the possession of the real property . . .'' This affirmance and modification spoke as of the entry of the judgment on November 22, 1944 (2 Cal.Jur., p. 806) as if it had been written in by the trial court.

Appellants state the question to be decided, as follows: ''Is the final judgment'' in the first case ''an enforceable judgment and entitled to full faith and credit, or has it been nullified by virtue of the judgment'' in this quiet-title action?

Appellants claim that because the judgment contained the declarations respecting respondents' obligations to clear off earlier liens if and when the debt was paid, respondents were estopped to sell the property. There certainly was no estoppel, for appellants in no way changed their position. There was no obligation to clear off earlier liens until the debt was paid and this was within the control of appellants or the obligor on the note. Appellants make the unusual claim that the declaratory part of the first judgment ''was effectively stayed by the perfecting of the appeal,'' citing section 949, Code of Civil Procedure. That section provides that ''the perfecting of an appeal stays proceedings in the court below upon the judgment or order appealed from . . .'' Appellants were not aggrieved by what the court below did (for it did nothing), but with what the respondents did, which was to cause the property to be sold without appellant's knowledge while the appeal was pending. They were not the obligors on the note. Neither the trust deed nor the law required notice to them of an intended sale. They knew that the note was in default, and they were chargable with knowledge of the consequences of such default. They knew, moreover, that respondents had taken possession following the default, a definite step toward ultimate enforcement.

There is nothing in the language of the first judgment which stayed the hand of either side. The existence of the default was established by that judgment. Appellants under the power of sale were entitled to force a sale at any time and such right could not have been impaired by a judgment which awarded possession—an intermediate, cumulative, remedy designed to conserve the security, and one not at all inconsistent with their ultimate remedy of sale, but auxiliary to it. There was nothing in the first judgment to prevent appellants from paying off the debt pending the appeal; the declaratory part of it simply defined the respondents' obligation

which would arise if they did so. By appealing the appellants were attempting to upset the adjudication of the default, and had they succeeded the respondents' possession would have suddenly ended, but their appeal was devoid of merit. While it is true that by proceeding with the sale respondents were acting at their peril, still we know of no way—and counsel have not suggested any—in which the enforcement of respondents' security could have been legally halted or delayed. That right was one of contract, not derived from any decree of foreclosure, but from the power of sale, and it was in no way involved in the first action.

*Morrow* v. *Morrow,* 40 Cal.App.2d 474 [105 P.2d 129], cited by appellants is not in point. There the husband stipulated, in Nevada, to pay his wife $75 a month alimony. On the same day the Nevada court incorporated that obligation into a decree of divorce awarded to him. The wife later sued him in California for arrearages and he was held to his obligation, the California courts giving full faith and credit to the Nevada decree, as they had to under the Constitution. The court held, also, that having stipulated the $75 a month provision into the decree, the husband was estopped to later attack it.

In *Wellborn* v. *Wellborn,* 81 A.C.A. 1030 [185 P.2d 410], cited by appellants, the Supreme Court granted a hearing and later dismissed the appeal as moot (32 Cal.2d 221 [195 P.2d 792]).

For reasons already given *Seidell* v. *Anglo-California Trust Co.,* 55 Cal.App.2d 913 [132 P.2d 12], cited by appellants, is not in point.

### The Appeal from the Order

■ Soon after the remittitur was filed in the first case appellants moved in the trial court for an order "enforcing its judgment as modified . . . and directing that *upon compliance by defendants with the terms of said judgment as modified that plaintiffs deliver immediate possession of the premises* . . . to defendants and further directing that plaintiffs account to defendants for the rents, issues and profits received" by them. (Emphasis added.) The judgment already provided for the very thing sought by the motion in the language which we have emphasized and the application for an accounting for rents, issues and profits is not at all understandable in view of the fact that the judgment which awarded respondents possession had been affirmed and had become final. Moreover no payment had been made or tendered, and, viewed from any

angle, appellants would have no standing on their motion without showing payment or tender.

The final answer to the motion is that title at that time had become vested in respondents.

The judgment and the order appealed from are, and each is, affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied October 23, 1948, and appellants' petition for a hearing by the Supreme Court was denied November 22, 1948.