[Civ. No. 24696. Second Dist., Div. One. June 6, 1961.]

FREDA J. THOMAS, Respondent, v. ROY T. THOMAS, Defendant; SOUTHERN CALIFORNIA EDISON COMPANY, Third Party and Appellant.

Rollin E. Woodbury, Harry W. Sturges, Jr., and Robert J. Cahall for Appellant.

W. Blair Gibbens and David M. Durst for Respondent.

LILLIE, J.—Southern California Edison Company, as third party, appeals from an order in a supplementary proceeding (Code Civ. Proc., § 719)[1] directing it to pay an employee's pension installment to the employee's former wife in partial satisfaction of support payments due her under a final judgment of divorce. The employee (the judgment debtor) did not appear in the supplementary proceedings; at that time his whereabouts was unknown, and the record is devoid of evidence that he is still alive.

The salient background facts are as follows: Mrs. Thomas secured a final judgment of divorce on March 23, 1945; by the terms of such judgment she was awarded payments of $75 per month for support and maintenance. Late in 1958 an arrearage in payments of $764 had accumulated, and a writ of execution (issued in December of that year) was returned unsatisfied. On January 15, 1959, Freda caused Edison to be served with a writ of attachment or garnishment of all monies, goods, credits, et cetera, due or owing to Roy; on January 19, Edison as garnishee furnished its answer denying that it owed Roy any money or held any personal property belonging to him. Subsequently, upon Freda's application and pursuant to the provisions of section 717, Code of Civil Procedure, Edison was ordered to appear and be examined concerning its alleged indebtedness; it was also forbidden to transfer any property belonging to Roy. The matter came on for hearing on April 17, 1959; meantime, on April 1, 1959, pension payments became due and were payable to Roy if he were otherwise qualified; these payments were held by Edison pending further order of the court.

The amount of Roy's pension, which is not in dispute, represents the total of payments under two separate pension plans, due April 1, 1959, reduced by certain sums withheld

---

[1]Section 719, Code of Civil Procedure provides: "The judge or referee may order any property of the judgment debtor, not exempt from execution, in the hands of such debtor, or any other person, or due to the judgment debtor, to be applied toward the satisfaction of the judgment; but no such order can be made as to money or property in the hands of any other person or claimed to be due from him to the judgment debtor, if such person claims an interest in the property adverse to the judgment debtor or denies the debt."

for federal income tax, insurance and medical dues. Each plan is generally similar and unfunded; thus, no assets, whether through the medium of a trust or a group annuity insurance policy, have been accumulated by or on behalf of Edison to meet its pension obligations thereunder, and the obligation to pay involves merely a promise by Edison to pay its qualifying retired employees sums of money as pensions. The "1938 Plan" provides a pension to employees which is based on their service with Edison prior to July 1, 1934; payments commence on the first day of the month following retirement and continue during the pensioner's lifetime, "terminating with the last monthly installment prior to the death of employee." The "1958 Plan" supplements payments from Social Security and other pension plans which are not here involved; payments commence on the first day of the month next following the employee's normal or early retirement date, and the last payment is that "due as of the first day of the month during which his death occurs."

Each pension check, pursuant to administrative procedures adopted by the pension committee, contains the following legend on the reverse thereof: "Southern California Edison Company requires that this draft be paid only if endorsed personally by the payee. Endorsement by an agent, executor, or administrator of payee will not be accepted." Additional conditions upon Edison's obligations are found in each of the plans. Thus, the 1938 Plan contains the following provision: "22. If any person while receiving an annuity or pension hereunder engages in any business, occupation, or activity, deemed by the company to be prejudicial to the interests of the company or any of its subsidiaries, such action may, in the discretion of the company, result in the discontinuance of that part of the annuity which shall have been provided by the company through the insurance company, and the retirement income for service prior to July 1, 1934. The company's determination that the employee is engaged in a business, occupation, or activity prejudicial to the interests of the company shall be final and conclusive upon the employee and the insurance company." And in the 1958 Plan there is this provision: "2.7 FACILITY OF PENSION PAYMENT (B) *Payment of Pensions to Pensioners Under Legal Disability:* Whenever and as often as any person entitled to payments hereunder shall be under a legal disability, or in the sole judgment of the committee, shall otherwise be unable to apply such payments to his own best interests and advantage, the committee,

in its discretion, may direct all or any portion of such payments to be made (i) to such person, (ii) to such person's legal guardian or conservator, or (iii) to such person's spouse or to any other person, to be expended for his benefit. The decision of the committee will, in each case, be final and binding upon all persons, and the committee shall not be obliged to see to the proper application or expenditure of any payments so made. Any payment made pursuant to the power herein conferred upon the committee shall operate as a complete discharge of all obligations under the plan in respect thereof of the company and the trustee." Finally, by each of the plans any interest thereunder is made nonassignable by operation of law or otherwise: "20: The interest of any employee, or joint annuitant, in retirement funds . . . shall be nonassignable whether by voluntary or involuntary assignment or by operation of law" (1938 Plan); "4.3 BENEFITS NOT ASSIGNABLE The benefits provided hereunder are intended for the personal security of persons entitled to payments under the plan, and, to the extent permitted by law, shall not be subject in any manner to the debts or other obligations of the persons to whom they are payable and shall not be sold, transferred, assigned or encumbered in any manner, either voluntarily or involuntarily" (1958 Plan). The existence of the foregoing limitations and conditions was asserted below in the form of a stipulation of facts executed by counsel for the respective parties.

Edison's position on this appeal may be stated as follows: As answering garnishee, having made a good faith denial of any indebtedness to Roy or its possession of any personal property belonging to its former employee, (1) such denial operated to deprive the trial court of jurisdiction to proceed further by way of supplementary proceedings, and it was incumbent on Freda to maintain an independent action against Edison for the recovery of the interest or debt (Code Civ. Proc., § 720)[2] where title to the interest or debt is properly tried and determined (*Wulfjen* v. *Dolton*, 24 Cal.2d 878, 890 [151 P.2d 840]); and (2) a pension annuity payable under

---

[2]Section 720, Code of Civil Procedure provides: "If it appears that a person or corporation, alleged to have property of the judgment debtor, or to be indebted to him, claims an interest in the property adverse to him, or denies the debt, the judgment creditor may maintain an action against such person or corporation for the recovery of such interest or debt; and the judge or referee may, by order, forbid a transfer or other disposition of such interest or debt, until an action can be commenced and prosecuted to judgment . . ."

the circumstances at bar is not subject to garnishment in the course of supplementary proceedings or at all.

The statutory procedure in proceedings supplementary to execution (Code Civ. Proc., §§ 714-723) is not by its terms made exclusive; thus, the necessity of an independent action in a given situation is recognized by section 720, Code of Civil Procedure. ■ " 'It is the settled law of this state that, since our statutes do provide for a method of reaching such assets by supplementary proceedings, there is no longer, *in cases where the statutory method is adequate,* any ground for the interposition of equity [citations] ... Where, however, the statutory proceedings supplementary to execution do not, for any reason, afford an adequate remedy, relief by creditor's bill may still be had [citations] ... ■ Proceedings supplementary to execution are wholly inadequate where the grantee or transferee of a judgment debtor asserts title in himself, for the reason that to make an order directing the application of property claimed by a person in his own right would be to deprive him of his property upon a summary proceeding and without due process of law [citation]. ■ Where a judgment creditor claims that title under a conveyance or transfer is invalid, an issue as to such ownership and title should be properly made and tried in an appropriate action in which a judgment may be had and the parties conclusively bound [citation]' " (*Wulfjen* v. *Dolton, supra,* 24 Cal.2d 878, 889-890). To the same general effect are *Bond* v. *Bulgheroni,* 215 Cal. 7 [8 P.2d 130], cited in the Wulfjen case, *Phillips* v. *Price,* 153 Cal. 146, 148-150 [94 P. 617], and *Saracco Tank & Welding Co.* v. *Platz,* 65 Cal.App.2d 306, 321-322 [150 P.2d 918].

■ It further appears that the summary procedure provided by section 719, Code of Civil Procedure, must be abandoned as long as the claim of interest is in good faith (*Phillips* v. *Price, supra,* 149-150). Although the trier of fact ordinarily must determine that phase of the matter, the sincerity of Edison's position in the premises was not raised below and is not here challenged; with commendable frankness, appellant's counsel has made mention of decisions (*Parker* v. *Page,* 38 Cal. 522, *Smith* v. *Smith,* 51 Cal.App.2d 29 [124 P.2d 117] and *Finch* v. *Finch,* 12 Cal.App. 274 [107 P. 594]) which, on their face, appear at variance with what has just been said; upon examination, however, all three cases are distinguishable on one or more grounds. For example, in *Parker* v. *Page, supra,* the referee found that the

third party denial was so "meagre and unsatisfactory" as to be "evasive and made in bad faith." Here, on the other hand, Edison has asserted the contingent nature of its obligations under the two pension plans together with its denial that conditions precedent to payment were fulfilled; one condition, of course, was Roy's failure to establish in the required manner and form that he was living on April 1, 1959. "An attaching creditor takes only such rights or interest as his debtor . . . When . . . the debtor has no right to the money in question, garnishment by the creditor is unavailing [citation]." (*Bunnell* v. *Basich Bros. Const. Co.*, 43 Cal.App.2d 538, 540-541 [111 P.2d 358].) Additionally, in asserting the nonassignability of Roy's pension, Edison is also asserting, adversely to the judgment debtor, that he is not free to dispose of his right to such payments as he sees fit, but that the right thereto is dependent on certain conditions and limitations enforceable by Edison.

Unless it must be said that Edison's claims are frivolous and a mere sham, proceedings under section 719, Code of Civil Procedure, should have been abandoned and Freda required to proceed with an independent suit to determine title (Code Civ. Proc., § 720). Edison is insisting that Freda be obliged to establish survivorship in the same manner required by the administrators of the pension programs of the judgment debtor; in that respect, we do not believe it may be validly argued that Edison and its employees may not contract to provide for the payment of pensions on any basis agreed. Edison is also insisting, assuming that the judgment creditor establishes the judgment debtor's survivorship, that the administrators of its pension plan are not obligated to deal with anyone other than the retired employee himself. The relationship between the company and its retired employees is a continuing one, in which the company has a continuing interest; for example, the 1938 plan provides that the employee's pension thereunder may be terminated if he engages in any activity prejudicial to the company, and under the 1958 plan discretion is conferred on the pension committee to apply payments for the pensioner's best interest and advantage. There is little room for doubt that in 1960, and more so with the passing years, the corporate employer has a distinct interest in providing for the old age security of its employees; such interest extends to insuring that the funds provided by pension plans, financed by the employer and by which it becomes obligated to pay, will be most effectively applied without any

unwarranted interference from creditors. As stated in appellant's brief: ". . . an impoverished pensioner makes a very poor spectacle in the eyes of the public, the customer and the fellow worker about to retire." These considerations, in the light of the statutory provisions and decisional law already discussed, compel the conclusion that Edison's claims are no mere sham; such claims having properly been asserted upon the hearing under section 719, Code of Civil Procedure, the trial court disregarded the plain restriction on its authority under the statute and its order cannot stand.

It is next contended that the pension annuity here payable is a contingent obligation which is not subject to garnishment in the course of supplementary proceedings; the obligation is contingent, says appellant, because the pension plan provides for monthly payments (after retirement) on the first day of each month, the last of which payments being the first day of the month in which the judgment debtor dies. It has been stated that supplementary proceedings are substantially identical with garnishment proceedings where used to obtain possession of third-party debts (*Hathaway* v. *Brady*, 26 Cal. 581, 592), and it has already been observed (*Wulfjen* v. *Dolton, supra,* 24 Cal.2d 878) that supplementary proceedings are a successor or substitute to the creditor's bill. *Clecak* v. *Dunn,* 95 Cal.App. 537 [272 P. 1104] involved a suit in the nature of a creditor's bill to collect arrearages on a judgment of divorce; the judgment creditor sought to have applied against the divorce judgment certain commissions owed by the defendants to the judgment debtor—these commissions, it appears, were held by the defendants as a guarantee against loss which might arise from defendants' liability on certain notes of the judgment debtor. The court held that until such notes were fully paid the commissions earned by the judgment debtor did not ripen into a debt, being merely contingent or conditional obligations. Said the court: " 'A debt which is uncertain and contingent in the sense that it may never become due and payable, is not subject to garnishment' [citations]" (p. 540). Again, in *Dawson* v. *Bank of America,* 100 Cal.App.2d 305 [223 P.2d 280], the creditor's bill sought to seize funds in the hands of the bank as escrow agent and held by it pursuant to instruction which had not then been fulfilled. The court held that there was no liability subject to garnishment since there was "a contingency both as to the amount of the claim and the party to whom it was to be paid, upon which the owing

of any debt and the existence of any liability depended" (p. 310). ▮▮▮ We believe the above principles and reasoning are applicable to the facts at bar.

▮▮▮ Appellant's final contention is as follows: "A pension annuity payable to a judgment debtor under a contract with his former employer which provides that the benefits payable under such contract may not be assigned voluntarily or involuntarily, or through operation of law, is not subject to garnishment"—the issue thus raised is said to be of first impression in California.

▮▮▮ Preliminarily, parties to a contract may make an agreement restricting the assignability of rights created thereunder so long as they do not violate statutory provisions or general rules of policy (5 Cal.Jur.2d, Assignments, § 20, p. 292). See *Parkinson* v. *Caldwell*, 126 Cal.App.2d 548 [272 P.2d 934], where the court quoted from *Fairbanks* v. *Crump Irr. etc. Co., Inc.,* 108 Cal.App. 197, 205 [291 P. 629, 292 P. 529] : "The contract, as we saw, provided that 'any and all moneys due' might be assigned with Fairbanks' 'written consent.' Appellant rightly says that no such language was needed to make payments due assignable. But the language, having been used, must be given some effect, and it would have none unless it were tantamount to a provision that payments should *not* be assigned *until due,* and *not then without Fairbanks' written consent.* We are aware of no reason why the provision, as so construed should not be given effect." The courts, of course, have placed certain limits on nonassignment clauses—there is strong policy in favor of the free transferability of all types of property (*Farmland Irrigation Co.* v. *Dopplmaier,* 48 Cal.2d 208, 222 [308 P.2d 732]) ; accordingly where the restriction against assignability is waived, rights may be transferred despite the prohibition (*Trubowitch* v. *Riverbank Canning Co.,* 30 Cal.2d 335, 342 [182 P.2d 182]), and the prohibition does not apply where all that remains to do under the contract is the payment of money. (*Butler* v. *San Francisco Gas & Elec. Co.,* 168 Cal. 32, 41 [141 P. 818].)

▮▮▮ Here, it is conceded, there has been no waiver by Edison as obligor; also, the Fairbanks case, quoted from *Parkinson* v. *Caldwell, supra,* would seem to support the view that where the prohibition against assignment relates to money due under a contract, it will be enforced where the prohibition in question is explicit.

Edison maintains that restrictions on assignability in employee pension plans are in the same category as "spend-

thrift clauses'' in spendthrift trusts. In California spend-thrift trusts have been recognized as valid. (*Canfield* v. *Security-First National Bank,* 13 Cal.2d 1, 12 [87 P.2d 830].) While acknowledging that the judgment debtor here does not have an equitable interest (as in the case of a spendthrift trust), Edison nevertheless argues that the principles invoked in such cases have application by analogy. Thus, a living trust involves an agreement between the trustor and the trustee for the benefit of the beneficiary, while the instant pension plan (or plans) is a contract between Edison and all of its employees for the benefit of such of them as may retire at retirement age—parenthetically, when the insurance contract is the funding medium, the contract may be between the insurer and the employer for the benefit of the employees. In any event, Edison asserts, ''the objective of pension programs, old age security, and the means of accomplishing such objective should not, as a matter of policy, turn on whether the pension obligation inuring to the benefit of the retired employee is a legal or an equitable right.''

It is true, of course, that ''one cannot by any disposition of his own property put the same or the income thereof beyond the reach of his creditors, so long as he himself retains the right to receive and use it.'' (*McColgan* v. *Walter Magee, Inc.,* 172 Cal. 182, 186 [155 P. 995, Ann.Cas. 1917D 1050].) The reasons for court refusals to permit trustors to seek shelter under spendthrift trust provisions (*McColgan* v. *Walter Magee, Inc., supra*), have no application here. First, the Edison employee cannot be said to be delivering up property subject to creditors' claims as consideration for the ''trust,'' and no creditor could seize the consideration given in return for his pension, which is the employee's continued service in Edison's employ. Second, the restriction against assignability was not included at the employee's request; as is said to be customary, the pertinent covenant was included in the plan at the insistence of Edison.

Certainly there would seem to be a policy in this state which favors the enforceability of clauses protecting retirement benefits from the claims of creditors. For example, if Edison's obligation under each plan had been funded through the medium of an insurance contract providing for payment directly by the insurer, it appears that such payments would be free from the claims of a judgment creditor. (Ins. Code, §§ 10129, 10130). Also section 10213 of the Insurance Code provides that, with inapplicable exceptions, ''. . . a policy of

group life insurance or the proceeds thereof paid to the insured employee or the beneficiary thereunder shall not be liable, either before or after payment, to be applied by any legal or equitable process to pay any liability of any person having a right under the policy." Another example of this state's public policy in the premises is found in the several statutes relating to public pensions and their exemption from claims of creditors: Education Code, section 14407 (state teachers' retirement system); Government Code, section 9359.3 (legislators' retirement fund); Government Code, section 21201 (state employees' retirement system); Government Code, section 31452 (county employees' retirement system); Welfare and Institutions Code, section 2006 (aid given under Old Age Security Law). Thus, the question is presented whether Edison's plans should be treated differently simply because there is a "formalistic distinction" inherent therein, namely, Edison undertook to assume the entire risk instead of funding it through premiums paid to an insurance company. Our attention has been directed to a decision of the New Jersey Supreme Court in *Hoffman* v. *Hoffman* (1951), 8 N.J. 157 [84 A.2d 441, 28 A.L.R.2d 1205], where the problem was thoroughly dealt with. It appears that plaintiff, a resident of California, received a final judgment of divorce in California on January 31, 1939, which judgment provided for her support and maintenance. Her husband, the defendant, was employed by General Foods Corporation, in which capacity he was a participant in a group annuity contract between General Foods and the garnishee, Prudential Insurance Company, a New Jersey corporation. The contract contained the following pertinent provision: "The active Employee's or Annuitant's Certificate and the Retirement Annuity Benefits and other payments provided under this Contract are nonassignable, whether by voluntary act or by operation of law . . ." Plaintiff sought to enforce arrearages by garnishing sums due under the annuity contract. There is this analysis of the problem (84 A.2d 442, 443): "The right of a judgment creditor in an action upon attachment is a derivative one. The obligation of the garnishee to the principal debtor was circumscribed by the contract of insurance between the employer and the garnishee. *By clear and positive language the garnishee excluded an obligation to pay annuity benefits to anyone other than the annuitant. To permit the plaintiff to reach the annuity benefits clearly violates that contractual undertaking.* To accept the contention of the plaintiff would

require the court to make a new contract for the parties—one which is contrary to the express undertaking of the garnishee in the agreement. *One of the purposes of a provision against assignment is to protect the insurance company from the necessity of dealing with persons other than those named in its policy and of determining at its peril which of several claimants may be entitled to the fund. Especially is it so in cases providing for regular periodical payments and as in this case, monthly periods.* The point is obvious, for instance, in this case where it is asserted that proceedings in attachment are out of the course of the common law and must be strictly construed and that under applicable law annuity payments and especially prospective ones have not been subjected to attachment. Unless the plan adopted in the insurance contract was in violation of public policy, it must be upheld. There is no specific statute relating to such an exemption in this State. The public policy to be considered in this case relates to the question whether as a social security measure the proceeds of group insurance policies for retirement purposes may be exempted from legal process to secure the employee against impoverishment. See Crawford on Group Insurance (1936) section 60, pages 149, 150. We are of the opinion that the provisions of the group insurance contract involved in this litigation were valid and enforceable and were not violative of any common law, constitutional or statutory provision, and the judgment of the trial court should be reversed and the attachment dismissed.'' (Emphasis added.) The court reviewed the various statutes of the state with respect to policy; noted that public pension funds were exempted from attachment, as is the case in California; noted that a majority of the states sustained the validity of the ''spendthrift trust,'' including the State of California, the court citing the case of *San Diego Trust & Savings Bank* v. *Heustis* (1932), 121 Cal.App. 675 [10 P.2d 158]; and concluded that no state policy precluded sustaining a nonassignability provision in the insurance contract.

Similar prohibitions against assignment of group life insurance contracts were deemed enforceable in *Metropolitan Life Ins. Co.* v. *Brown's Admr.* (1927), 222 Ky. 211 [300 S.W. 599, 600], in which the court wrote: ''The chief reason the coal company had for effecting and keeping paid the cost of this insurance for its employees was that they might thereby be induced to continue in its service. Such tendency as the insurance had to that end would be destroyed completely by

the assignment of the policy and its benefits. Hence the stipulation against assignment of the insurance was wholly reasonable and must be upheld.''

In *Bimestefer* v. *Bimestefer* (1954), 205 Md. 541 [109 A.2d 768, 771], a prohibition against assignment of a group life insurance policy was given effect to permit the insured to designate a beneficiary after he had purported to assign his insurance to his son. Cases are there collected in which such prohibitions have been enforced, among which cases may be found the case of *Kauffman* v. *Kauffman* (1949), 93 Cal.App. 2d 808 [210 P.2d 29], in which the Court noted that the terms of the contract between the government and the insured as established by the National Life Insurance Act and the World War Veterans' Relief Act included a prohibition against assignment which was enforced against a divorced wife who by property settlement agreement sought to prevent the insured (her ex-husband) from changing beneficiaries, an agreement which the court held was an assignment.

We are persuaded that no policy consideration barring enforcement of the prohibition against involuntary assignment is involved in the instant case. In almost every instance where retirement programs are the subject of regulation by the Legislature the rights thus authorized to be provided are preserved against the claims of creditors. Where annuities are made available pursuant to private insurance contract, the benefits provided thereunder are rendered immune to claims of creditors. Even the case law supports the policy here involved, both as a restriction against assignment of rights under a contract and as a restriction against assignment of an interest under a spendthrift trust. Consequently, unless there is some intervening policy arising because of the status of the judgment creditor as the former wife of Roy T. Thomas, there would appear to be no reason why, as a policy matter, such nonassignability feature should not be enforced in the instant case.

With limited exceptions not here applicable, a judgment for alimony does not confer upon the judgment creditor thereunder a special status entitling her to seize assets otherwise exempt from execution. Notwithstanding a contrary position in other jurisdictions, California appears clearly to be one of those states in which the divorced wife, as the beneficiary of an alimony decree, has no status different from that of other judgment creditors. In *San Diego Trust & Savings Bank* v. *Heustis* (1932), 121 Cal.App. 675,

688-689 [10 P.2d 158], the court upheld the validity of spend-thrift trusts. In that case the court discussed the leading case of *Estate of Mary H. Moorehead* (1927), 289 Pa. 542 [137 A. 802, 52 A.L.R. 1251], which held that, by virtue of the relationship of husband and wife, the interest of a beneficiary in a spendthrift trust could be reached in order to provide support and maintenance for his wife. However, it was unimpressed with the argument and rejected this contention, declaring: ''The wife has several remedies open to her under the laws of the state of California, and if the husband has property in the state of Texas of his own, of course it can be reached, but it seems that when she obtained a judgment for support and maintenance she became a judgment creditor, and the relation of debtor and creditor exists between her and her husband. (See *Lisenbee* v. *Lisenbee,* 42 Cal.App. 567, 570 [183 P. 862] ; *Barber* v. *Barber,* 21 How. (U.S.) 582 [16 L.Ed. 226].) There can be no question but that by the great weight of authority she is a judgment creditor.''

In *In re Smallbone* (1940) 16 Cal.2d 532 [106 P.2d 873, 131 A.L.R. 222], the petitioner by habeas corpus sought discharge from custody after committal for failure to pay support money due his former wife under a divorce judgment. The petitioner was accumulating a pension from the city and county of San Francisco at the rate of $100 a month and he steadfastly refused to pay any part thereof to his former wife in satisfaction of his divorce decree. He was therefore committed for contempt, and based his petition on the claimed exemption of the pension installments. The court held in effect that it would find no exception in the exemption statutes in favor of alimony judgments, but that such statutes should not be construed to extend their protection to funds in the hands of the judgment debtor or to funds unconditionally within his control. The court declared (pp. 534, 535) : ''There is no exception in the exemption laws which would authorize the satisfaction of an alimony judgment out of exempt property belonging to the husband and it is not the province of the courts to read such an exception into the law, in the absence of waiver of the exemption by the husband. But, this need not prove determinative of this proceeding. We are equally satisfied that when exempt property is converted into cash in the hands of the alimony debtor, or such money is being held for him by a third person, subject to relinquishment upon his demand or stipulation, he is no longer in a

position to assert that he is not financially able to respond to the order or decree of the court directing him to pay alimony, attorney's fees or costs in an action for divorce . . . Under such circumstances, to accept petitioner's contention would be to run counter to the purpose of the exemption statute. Its purpose is not to protect the debtor himself from liability for his debts, but to protect his exempt property from forced sale. The obligation to support a wife is not necessarily, and was not here, terminated upon the entry of the divorce decree. To accept petitioner's contention under the facts here present would permit the delinquent husband to evade such obligation and responsibility by sheltering himself behind legislation not intended for that purpose.''

 Edison is not interested in collaborating with the judgment debtor in escaping any obligation which may have been imposed upon him to provide support and maintenance for his former wife; it does, however, have a separate and independent interest in the enforceability of the prohibition against assignment, which interest is not merely that of the administrator of the pension plans in question, but also as a quasi trustee on behalf of the many other participants in the pension plans here involved. (*Cf. Hearst* v. *Hearst* (D.C., N.D. Calif., 1954), 123 F.Supp. 756.) Also, although the record does not show whether Roy has remarried, such may well be the case, and a similar obligation of support and maintenance may currently be owed by the judgment debtor to a new wife. See *Yager* v. *Yager* (1936), 7 Cal.2d 213, 218-219 [60 P.2d 422, 106 A.L.R. 664].

For the reasons stated, the order is reversed.

Wood, P. J., and Fourt, J., concurred.