[Civ. No. 26491.  First Dist., Div. One.  Dec. 18, 1969.]

CLARENCE P. HUSTEAD, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent;
THELMA L. PATTERSON, Real Party in Interest.

**COUNSEL**

William H. Hoogs for Petitoner.

No appearance for Respondent.

Leonard S. Lurie , Lucille F. Athearn and Alfred A. Affinito for Real Party in Interest.

**OPINION**

**SIMS, J.**—By his petition for writs of mandate and prohibition, petitioner seeks (1) an order directing the respondent court to vacate its original

order, made March 15th and signed and filed March 21, 1968, in supplementary proceedings in a divorce action between Russell A. Patterson and Thelma L. Patterson, which directed petitioner, as sublessee, to pay the monthly rentals accruing under his sublease which were payable to Mr. Patterson, as lessee and sublessor of the premises, to Mrs. Patterson; (2) an order directing the respondent court to recall and quash a writ of execution issued against petitioner in the Patterson action for the sum of $800, and levied upon his bank account shortly prior to December 2, 1968; (3) an order prohibiting the respondent court from ordering the issuance of any additional writs of execution; and (4) an order directing Mrs. Patterson, as real party in interest, to return to petitioner the moneys received by her pursuant to the levy under the writ of execution.

The petitioner is relieved of the prospective provisions of the order entered in March 1968, and from the effect of the writ of execution purportedly issued on that order. The question of restitution is unresolved because of an insufficient record of those proceedings.

The facts as they appear from the petition, the answer filed by real party in interest, and other papers filed in the proceedings are as follows: On January 2, 1962, Mr. Patterson leased the premises in question from the Ethel Patterson Trust, at a monthly rental of $600. On March 29, 1963, petitioner entered into a sublease of the premises from Patterson for a term expiring March 31, 1973, at a rental payable in installments of $800 on the first day of each month.

In 1964, Mrs. Patterson cross-complained in Mr. Patterson's action for divorce and secured an award for child support and alimony. In February 1968, after an execution issued against the property of Mr. Patterson was returned unsatisfied, Mrs. Patterson secured an order for the examination of petitioner as a debtor of Mr. Patterson, the judgment debtor. At a hearing on March 15, 1968, the court found that petitioner "is indebted to [the judgment debtor] pursuant to the terms of a written lease agreement providing for monthly rentals in the sum of Eight Hundred Dollars ($800.00) per month from said [petitioner] to said [judgment debtor]." The court ordered, "that [petitioner] make and deliver all future rental payments in the sum of Eight Hundred Dollars ($800.00) per month, to [the attorney for the judgment creditor] for the account of [the judgment debtor] to [the judgment creditor] for child support and alimony then due and payable until further order of court."

Thereafter, through the month of October, petitioner paid the monthly rental as ordered. On October 30, 1968, he received a notice of assignment of lease, dated October 28, 1968, which advised him that Mr. Patterson, the sublessor, had assigned all of his right, title and interest in the lease to one Harry Chapman of Painesville, Ohio, and directed the

petitioner to make all payments due and to become due under the terms of the lease to the assignee in care of a local attorney. An accompanying letter from the attorney demanded the rent payment due November 1, 1968. Thereupon, petitioner communicated with the interested parties and advised them that in the absence of their agreement it would be necessary to file an interpleader action. The prime lessor advised petitioner that if the $600 due under the prime lease was not paid, steps would be taken to terminate that lease and evict petitioner.[1] Chapman and Patterson instructed petitioner to pay the $600 to the prime lessor, and to interplead the balance. Mrs. Patterson suggested that the entire $800 be interpleaded.

Petitioner paid $600 of the November rent to the prime lessor and on November 22, 1968, filed an interpleader action, deposited the $200 balance in court, and caused all parties, other than the nonresident Chapman to be served with copies of the summons and complaint. Mrs. Patterson secured the writ of execution which petitioner seeks to quash, and $800 was seized from petitioner's bank account by the sheriff.

On December 2, 1968, petitioner moved the trial court for an order recalling and quashing the writ of execution and for an order revoking the order directing petitioner to pay the monthly rental of $800 to Mrs. Patterson's attorney. On December 6, 1968, petitioner was served with a notice from the prime lessor to pay the December rent or vacate the premises. He thereupon paid the sum of $600 to the prime lessor, and interpleaded the $200 balance in the pending interpleader action. On December 24th, the prime lessor's motion to be dismissed from the interpleader action was granted. On the same day respondent court denied petitioner's motion to recall and quash the writ of execution. On January 22, 1969, petitioner commenced these proceedings, and on January 30, 1969, as evidenced by supplemental filings (see *Finn* v. *Butler* (1925) 195 Cal. 759, 765 [235 P. 992]), the respondent court denied his motion to vacate the March 1968 order.

Petitioner contends that the order of March 15, 1968, is a void order because of its continuing nature; and if it was not void in its inception, it became a nullity with respect to the November 1968 rental because of the notice of assignment; and that the order for the issuance of a writ of execution against him was void because it was wholly unauthorized. Real party in interest asserts that the order of March 15, 1968, whether erroneous or not, was a judgment which became final upon the petitioner's failure to appeal, and that the court properly ordered execution to issue on that judgment.

An examination of these contentions in the light of the facts and

---

[1]Petitioner alleged on information and belief that his sublessee, Patterson, had paid the rent under the prime lease during the months—April through October—he had remitted the $800 payments to Mrs. Patterson's attorney pursuant to the order.

applicable legal principles reveals that the respective rights and obligations of the parties lie between the respective extremes for which they contend, and indicates that petitioner is entitled to some of the relief which he seeks.

*The Order of March 15, 1968*

Reference to the declarations filed in support of the order, and the formal order signed and filed March 21, 1968, indicates that petitioner was ordered to appear in supplementary proceedings, pursuant to the provisions of section 717 of the Code of Civil Procedure,[2] and that the order was purportedly made under the provisions of section 719[3] of that code.[4] So far as appears from the record no attempt has been made to levy, seize and apply Mr. Patterson's leasehold interest in the property to the satisfaction of the obligations owed to his former wife. (See 33 C.J.S., Executions, § 37, p. 170; 6 Am.Jur.2d, Attachment and Garnishment, § 107, p. 637; 19 Cal. Jur.2d, Executions, § 50, p. 703; and cf. *Meacham* v. *Meacham* (1968) 262 Cal.App.2d 248 [68 Cal.Rptr. 746] where the contract giving rise to installment payments was levied upon and sold to satisfy a judgment; see also *McKenzie* v. *Hill* (1908) 9 Cal.App. 78, 80 [98 P. 55].) He was not a party to the supplementary proceedings. So far as appears from the record he was free to alienate, forfeit, or otherwise dispose of that interest as he saw fit.

The order was erroneous insofar as it purported to order the petitioner, as garnishee, to pay over rental payments which would only accrue in the future. ■ "To attach tangible property, or garnishee a credit, it is essential that the property or credit exist." (*Early* v. *Redwood City* (1881) 57 Cal. 193, 195. See also *Thomas* v. *Thomas* (1961) 192 Cal.App.2d 771, 778 [13 Cal.Rptr. 872]; *Dawson* v. *Bank of America* (1950) 100

[2]Section 717 provided and now (Stats. 1969, ch. 134, § 3, p. 286) provides in part: "After the issuing or return of an execution against property of the judgment debtor, or of any one of the several debtors in the same judgment, and upon proof by affidavit or otherwise, to the satisfaction of the judge, that any person or corporation has property of such judgment debtor, or is indebted to him in an amount exceeding fifty dollars ($50), the judge may, by an order, require such person or corporation, or any officer or member thereof, to appear at a specified time and place before him, or a referee appointed by him, and answer concerning the same. . . ."

[3]Section 719 provided and provides: "The judge or referee may order any property of the judgment debtor, not exempt from execution, in the hands of such debtor, or any other person, or due to the judgment debtor, to be applied toward the satisfaction of the judgment; but no such order can be made as to money or property in the hands of any other person or claimed to be due from him to the judgment debtor, if such person claims an interest in the property adverse to the judgment debtor or denies the debt."

[4]The proceedings are available to enforce an order for alimony or support. (*Biltmore Drug Store* v. *Superior Court* (1929) 101 Cal.App. 363, 364 [281 P. 710]; *Edwards* v. *Superior Court* (1928) 88 Cal.App. 260, 262 [263 P. 347].)

Cal.App.2d 305, 309-310 [223 P.2d 280]; and *Bunnell* v. *Basich Bros. Constr. Co.* (1941) 43 Cal.App.2d 538, 540-541 [111 P.2d 358].)

The judgment creditor relies on principles recently reiterated in *Meacham* v. *Meacham, supra,* as follows: "More recently it has been held, however, that 'While a "debt which is uncertain and contingent in the sense that it may never become due and payable, is not subject to garnishment" [citations], it is now established in this state that a present right of action upon the obligation is not essential to a valid garnishment and that earlier statements or intimations to the contrary, as in *Early* v. *Town of Redwood City,* 57 Cal. 193, no longer square with the prevailing doctrine. [Citations.]' (*Brunskill* v. *Stutman,* 186 Cal.App.2d 97, 104 . . .) It is further stated in *Brunskill* that 'Mere uncertainty in the amount of the debt at the time of the levy does not defeat the garnishment if the amount of the obligation is susceptible of measurement by facts then known, or by subsequent events.' (*Supra,* p. 104.) Also cited in the same case is the following statement of the law: 'Where there is no contingency as to the garnishee's liability, the only contingency being as to the amount thereof, and where the amount of the liability is capable of definite ascertainment in the future, there is no such contingency as prevents garnishment of the claim, even though, it has been held, it may be that eventually it will be found that nothing is due. . .' (P. 105.)" (262 Cal.App.2d at p. 252.)

■ No California case has been found which deals with the question of whether installments of rent due in the future can be the subject of garnishment. It has been noted in another jurisdiction that the question will not generally arise because the judgment creditor can seize the judgment debtor's interest in the land, and so obtain the right or the value of the right to the rental payments. (See *Glassman* v. *Hyder* (1968) 23 N.Y.2d 354, 361 [244 N.E.2d 259, 261].) In the case last cited the court ruled that future rents cannot be attached or garnished, and observed, ". . . most other jurisdictions have held that future rents are so speculative as not to qualify as debts certain to be due, or even as debts at all and hence are not garnishable (see *United States Fid. & Guar. Co.* v. *Wrenn,* 67 App.D.C. 94, 89 F.2d 838; *Calechman* v. *Great Atlantic & Pacific Tea Co.,* 120 Conn. 265, 180 A. 450, 100 A.L.R. 302, and cases cited in Ann.—Garnishment of Tenant, 100 A.L.R. 307)." In addition to the authorities cited see *Keck* v. *Vogt* (1941) 108 Colo. 382, 385 [117 P.2d 1005, 1007]; *Highland Trust Co.* v. *Slotnick* (1935) 289 Mass. 119, 121 [193 N.E. 831, 832]; Annot., Garnishment-Instalment Obligation (1949) 7 A.L.R.2d 680, 684; Annot., Garnishment-Contingent Obligation (1941) 134 A.L.R. 853, 860; 38 C.J.S., Garnishment, § 98, p. 306; and 6 Am.Jur.2d, Attachment and Garnishment, § 113, p. 641.) Since the obligation to pay future installments of rent is generally dependent upon the continuance of

possession and enjoyment of the premises, and since it cannot be determined prospectively whether there will be any interference with that possession, the obligation of the tenant to the landlord falls within the first category of cases and cannot be reached by garnishment.

The judgment creditor also contends that the order to turn over future payments was warranted because her claim is a claim for alimony. In *Bruton* v. *Tearle* (1936) 7 Cal.2d 48 [59 P.2d 953, 106 A.L.R. 580], the court quoted the following with approval, " 'There is a difference between a judgment for money or property and that of a decree for alimony; and the decree for alimony, because of such difference in the character of the obligation, may be enforced by more efficient and effective means than those given to the enforcement of judgments at law.' " (7 Cal.2d at p. 57.) The court, in upholding the appointment of a receiver to collect the judgment debtor's future earnings, stated: "If permanent alimony be regarded as a part of the husband's estate and as a portion of his current income and earnings, then the wife under her alimony judgment has an interest in the husband's earnings both those which have accrued and those which will fall due in the future. In such a case there can be no legal objection to an order of court appointing a receiver for the purpose of securing to the wife her interest in those earnings." (*Id.,* at p. 58.) There is no showing that the creditor in this case (in the absence of a levy and seizure of the debtor's leasehold interest) had such an interest in the rental payments as would authorize the appointment of a receiver, or proceedings equivalent to such appointment as under the order in question. Moreover, the appointment of receiver to collect such earnings as may become due is not a precedent for ordering the prospective debtor of the judgment creditor to pay over directly sums which are not yet due. That case is not controlling.

The judgment creditor insists that even though the order was erroneous it was binding on the garnishee as a final judgment from which no appeal was taken. In *Bronzan* v. *Drobaz* (1892) 93 Cal. 647 [29 P. 254], the judgment creditor brought an independent action against the garnishee who, in supplementary proceedings in a prior action, had been ordered to pay funds he held for the judgment debtor to the judgment creditor. In affirming the judgment in the second action the court observed, with respect to the prior proceedings, "We do not think it appears on the face of the judgment roll offered in evidence that the court had no jurisdiction to make any order, nor that Drobaz was not indebted to the corporation in the sum of $400.26. The referee found that Drobaz was indebted to the corporation in the sum named, and the court approved and confirmed the report, and adjudged that the money be paid over to the plaintiff. Surely the court had jurisdiction to make the order, and the most that can be said of its action is

that it was erroneous. The order was the final determination of the rights of the parties in the proceeding, and it, in effect, constituted a judgment (Code Civ. Proc., § 577), on which an execution might have been issued (Code Civ. Proc., § 1008), and from which an appeal might have been taken. (Code Civ. Proc., § 963.)" (93 Cal. at pp. 650-651. See also *Anglo-Californian Bank* v. *Superior Court* (1908) 153 Cal. 753, 755-756 [96 P. 803]; *McCullough* v. *Clark* (1871) 41 Cal. 298, 303; *Stensland* v. *Superior Court* (1918) 39 Cal.App. 172, 174 [178 P. 549]; *McKenzie* v. *Hill, supra,* 9 Cal.App. 78, 80; and *Societa Di Mutuo Socorso* v. *Mantel* (1905) 1 Cal.App. 107, 110 [81 P. 659].)

The last principle is not decisive of this action. The finding on March 15, 1968, as incorporated in the order signed and filed March 21st, that the petitioner is indebted to the judgment debtor "pursuant to the terms of a written lease agreement providing for monthly rentals in the sum of Eight Hundred Dollars ($800.00) per month from" petitioner to the judgment debtor, is not a finding that petitioner was unconditionally so indebted during future months. The order that petitioner "make and deliver all future rental payments . . ." to the attorney for the judgment creditor shows on its face that it is invalid. It is unnecessary to determine whether this invalidity was of such jurisdictional nature that it could be attacked collaterally after the time for appeal had expired. (See *Farley* v. *Farley* (1964) 227 Cal.App.2d 1, 7-10 [38 Cal.Rptr. 357]; 1 Witkin, Cal. Procedure (1954) Jurisdiction, §§ 148-151A, pp. 411-417, and 1967 Supp., pp. 202-205.) At best the order can only apply to such rental payments as might become due from petitioner to the judgment debtor. In any event, since it was prospective in nature, it must be modifiable upon changes in facts and circumstances which were not evident at the time it was entered. It could not be conclusive with respect to matters which were not only unlitigated at the hearing, but also could not be presented at the hearing because they did not exist. The question of whether the trial court erred in failing to vacate the order, and in failing to quash the writ of execution, ostensibly issued upon it, cannot be resolved by resort to the principle of res judicata. (*Standard Livestock Co.* v. *Pentz* (1928) 204 Cal. 618; 627-629 [269 P. 645, 62 A.L.R. 1239]; *Lunt* v. *Boris* (1948) 87 Cal.App.2d 694, 695 [197 P.2d 568]; and see 29 Cal.Jur.2d, Judgments, § 237, p. 197, fn. 1 and text; and § 261, pp. 230-232. Cf. *Bronzan* v. *Drobaz, supra,* 93 Cal. 647, 651-652; and *Harrold* v. *Harrold* (1954) 127 Cal.App.2d 582, 584 [274 P.2d 183].) Attention is directed to the effect to be given the supervening facts.

*The Notice of Assignment and Demand for the Basic Rent*

██ The record is uncontradicted that prior to the accrual of the rent due November 1, 1968, the garnishee was served with notice that the

judgment debtor had assigned his lease, and he was advised that the assignee of that lease and the lessor under the prime lease were respectively directing and demanding that he pay the basic rent of $600 to the latter.[5] There then remained nothing due to the judgment debtor on November 1, 1968, so there was nothing upon which the prior order could feed.

"The effect of the assignment, as between the assignor and the assignee, was, in any case, to pass title completely to the latter to each installment of rent as it accrued. Therefore at the time of service of the garnishment there was no estate or money of the judgment debtor in the hands of the garnishee; and, since the attachment could only be levied upon her moneys or credits, it is obvious there was nothing here to which it could attach." (*Commercial Credit Co.* v. *Campbell* (1934) 74 F.2d 468, 469 [64 App. D.C. 64].) The rights of a garnisheeing creditor are in similar manner subordinated to the rights of a mortgagee of the judgment creditor who exercises a right of entry to leased premises in order to collect the rents. (*Highland Trust Co.* v. *Slotnick, supra,* 289 Mass. 119, 121-123 [193 N.E. 831, 832-833]; *King* v. *Housatonic R.R. Co.* (1877) 45 Conn. 226, 234-235; but cf. *Ivor B. Clark Co.* v. *Hogan* (2d Cir.1969) 411 F.2d 788, 789.)

The petitioner should be protected in the payments of $600 to the prime lessor for the rent due him on November 1st and December 1st. The situation is analogous to that in *Nashua Light, Heat & Power Co.* v. *Francestown Soapstone Co.* (1908) 74 N.H. 511 [69 A. 883, 18 L.R.A. N.S. 396], where the court upheld a finding that the judgment creditor of a sublessor could not recover rent from the sublessee who had paid rent to the prime lessor when threatened with eviction. Here the record indicates that petitioner's failure to pay the basic rent would have resulted in termination of his tenancy, and the end of any possible benefit to the judgment creditor.

The petitioner out of an abundance of caution interpleaded the balance of the rental payments due from him. The judgment creditor is in no position to complain of this action.

The trial court erred in failing to vacate or modify the March order on the foregoing facts. In the first place, the order was invalid as an attempt to garnish future rents. Even if it be assumed that the order was immune from collateral attack (see discussion above), it was an abuse of discretion for

---

[5]There is nothing in the record to show that the assignment and demand were frivolous or sham. (See *Thomas* v. *Thomas* (1961) 192 Cal.App.2d 771, 777 [13 Cal.Rptr. 872]; and cf. *Bronzan* v. *Drobaz* (1892) 93 Cal. 647, 648 [29 P. 254].) Nothing in this decision should be construed to prevent the judgment creditor from questioning the actions of the judgment debtor, his assignee, and the prime lessor in appropriate proceedings in which all of them whose rights would be affected have been made parties.

the court to fail to consider the facts which had arisen since it was made.

"It must be remembered that whatever rights appellant [the judgment creditor] may have against respondent [a creditor of the judgment debtor which held security for his note, and transferred the note and the security after a levy to which it had made return that it was not indebted] exist solely by virtue of statute. The respondent is not indebted to appellant—there is no privity between a judgment creditor and his debtor's debtor. Formerly the remedy of such a judgment creditor was by a creditor's bill, but now, except in unusual cases, of which this is not one, rights of the judgment creditor against the debtor's debtor are governed entirely by those provisions of the Code of Civil Procedure providing for proceedings supplementary of execution. (Sec. 714 et seq.) ▮ Under those sections an alleged debtor of the judgment debtor may be fully examined under oath as to any assets of the judgment debtor under his control, witnesses may be called, and if it appears that any such assets are in his hands, the court may order them to be turned over to the judgment creditor. However, if the person alleged to have the property of the judgment debtor claims any interest in the property, or denies the debt, then and only then the judgment creditor, under section 720 of the Code of Civil Procedure, may bring an action against such person to recover the property." (*Farmers & Merchants Bank v. Bank of Italy* (1932) 216 Cal. 452, 455-456 [14 P.2d 527]. See also *Wulfjen* v. *Dolton* (1944) 24 Cal.2d 878, 890 [151 P.2d 840]; *Bond* v. *Bulghereni* (1932) 215 Cal. 7, 10 [8 P.2d 130]; *Finn* v. *Butler, supra,* 195 Cal. 759, 764-765; *Phillips* v. *Price* (1908) 153 Cal. 146, 149-150 [94 P. 617]; *William Deering & Co.* v. *Richardson-Kimball Co.* (1895) 109 Cal. 73, 82-85 [41 P. 801]; *Lewis* v. *Chamberlain* (1895) 108 Cal. 525, 527-528 [41 P. 413]; *Herrlich* v. *Kaufmann* (1893) 99 Cal. 271, 274-275 [33 P. 857, 37 Am.St.Rep. 50]; *McDowell* v. *Bell* (1890) 86 Cal. 615, 616 [25 P. 128]; *Kapelus* v. *Family Health Foundation* (1969) 276 Cal.App.2d 181, 183-184 [80 Cal.Rptr. 763]; *Oksner* v. *Superior Court* (1964) 229 Cal.App.2d 672, 684-685 [40 Cal.Rptr. 621]; *Thomas* v. *Thomas* (1961) 192 Cal.App.2d 771, 776-777 [13 Cal.Rptr. 872]; *Takahashi* v. *Kunishima* (1939) 34 Cal.App.2d 367, 373-374 [93 P.2d 645]; *Pacific Coast Auto. Assn.* v. *Superior Court* (1932) 121 Cal.App. 664, 666 [9 P.2d 880]; *G. Cavaglieri Mortg. Co.* v. *Superior Court* (1926) 79 Cal. App. 655, 658 [250 P. 700].)

From the foregoing it is clear that new supplementary proceedings with respect to either the rental payment falling due on November 1st or December 1st could only result in the limited relief authorized by section

720 of the Code of Civil Procedure.[6] The earlier order should not avail to defeat the established procedure. When the intervening facts were called to the trial court's attention it should have made an appropriate order in accordance with the statute.

*The Writ of Execution*

■    Some of the authorities cited above in support of the proposition that an appeal may be taken from an order entered in supplementary proceedings indicate that a writ of execution may issue against the judgment debtor's debtor on such an order. (See *Bonzan* v. *Drobaz, supra,* 93 Cal. 647, 651; and *Societa Di Mutuo Socorso* v. *Mantel, supra,* 1 Cal.App. 107, 110; and note *William Deering & Co.* v. *Richardson-Kimball Co., supra,* 109 Cal. 73, 78.) No question is raised insofar as those cases indicate that a writ of execution may issue in the principal action against property of the judgment debtor which is disclosed by an examination of the judgment debtor under sections 714 or 715 of the Code of Civil Procedure, or by an examination of one who has property of the judgment debtor under section 717. In this case, however, the writ of execution issued against property of the garnishee. Section 721[7] suggests that contempt is the proper procedure to take against a garnishee who fails to pay the amount due the judgment debtor to the judgment creditor when a proper order has been made under section 719 (see fn. 3 above). The fact "that there is no privity between a judgment creditor and his debtor's debtor" (*Farmers & Merchants Bank* v. *Bank of Italy, supra,* 216 Cal. at p. 455) suggests that execution against the garnishee is not a proper remedy.

In this case it is unnecessary to determine whether execution may issue against property of a garnishee who has failed to comply with an order made under section 719. As has been demonstated above the order was ineffective to obligate the garnishee to pay over rental payments not due the judgment defendant. The garnishee had paid over to the judgment creditor's attorney under the order, unauthorized as it was, all sums that had become unqualifiedly due to the judgment debtor. There were no grounds for

---

[6]Section 720 provided and provides: "If it appears that a person or corporation, alleged to have property of the judgment debtor, or to be indebted to him, claims an interest in the property adverse to him, or denies the debt, the judgment creditor may maintain an action against such person or corporation for the recovery of such interest or debt; and the judge or referee may, by order, forbid a transfer or other disposition of such interest or debt, until an action can be commenced and prosecuted to judgment. Such order may be modified or vacated by the judge or referee granting the same, or the court in which the action is brought, at any time, upon such terms as may be just."

[7]Section 721 provides: "If any person, party, or witness disobey an order of the referee, properly made, in the proceedings before him under this chapter, he may be punished by the court or judge ordering the reference, for a contempt."

ordering payment over of the installment due November 1st. Therefore, any attempt to enforce payment of the November 1st installment by issuance of a writ of execution was unsupported. When these facts were brought to the attention of the court it was its duty to recall and quash the writ of execution.

*Scope of Relief*

■ Under principles and authorities which have been referred to above, the judgment creditor insists that petitioner is not entitled to any relief by way of extraordinary writ, and should be relegated to an appeal. From the record in this case it is apparent that as long as the March 1968 order stands unmodified as interpreted by the trial court the petitioner is subject to the threat of contempt proceedings under section 721 if he fails to pay the full $800 to the judgment creditor. On the other hand, if he fails to pay the basic rent to the prime lessor he may be evicted by title paramount. The payment of the basic rent at the request of and with the consent of the assignee of the judgment debtor, and the payment of the $200 into court may prevent eviction by his immediate landlord.[8] Nevertheless, it does not satisfy the claims asserted by the judgment creditor.

In *Kapelus* v. *Family Health Foundation, supra,* the court indicated that prohibition was a proper remedy to prevent enforcement of an order against a garnishee who has denied the obligation to the judgment debtor. (276 Cal.App.2d at p. 184. See also *Finn* v. *Butler, supra,* 195 Cal. 759, 765-766; *McDowell* v. *Bell, supra,* 86 Cal. 615, 616; *Pacific Coast Auto. Assn.* v. *Superior Court* (1932) 121 Cal.App. 664, 666-667 [9 P.2d 880]; and *G. Cavaglieri Mortg. Co.* v. *Superior Court, supra,* 79 Cal.App. 655, 658.)

In *Evans* v. *Superior Court* (1942) 20 Cal.2d 186 [124 P.2d 820], a writ of mandamus was issued directing the superior court to recall and quash a writ of execution which was improvidently issued, despite the fact that the petitioner had a remedy by appeal from the denial of his motion for that relief in the lower court. Under the circumstances of this case similar relief is warranted.

The record does not indicate the disposition that has been made of the $800 allegedly seized under the writ of execution. The restitution necessita-

---

[8]It would appear that interpleader is one manner in which to determine who is entitled to the rental payments. (See *Takahashi* v. *Kunishima* (1939) 34 Cal.App.2d 367, 375 [93 P.2d 645].) No opinion is expressed, however, as to the relative rights of the judgment creditor, the judgment debtor, or the latter's assignee as they may be determined in such an action, or in any separate action properly instituted by the judgment creditor.

ted by the improper issuance of the writ of execution may best be left to the trial court. The record indicates facts which would permit the court to grant the judgment creditor appropriate relief under section 720 which is yet consistent with the principles enunciated above. The order here, therefore, should and will permit a further exercise of jurisdiction by the trial court.

Let a peremptory writ of prohibition issue prohibiting the trial court from enforcing its order signed and filed March 21, 1969, except insofar as it may have been voluntarily performed prior to November 1, 1968; and let a peremptory writ of mandamus issue directing the respondent court (1) to recall and quash the writ of execution heretofore levied on the bank account of petitioner, (2) to vacate and set aside its orders of December 24, 1968 and January 20, 1969 which denied petitioner the relief requested in his notice of motion dated December 2, 1968 and filed December 6, 1968, and (3) to make such order in the proceedings as may be consistent with the provisions of section 720 of the Code of Civil Procedure and this decision.

Molinari, P. J., and Elkington, J., concurred.